Mark D. STONE *v.* STATE of Arkansas

CR 84-175                                                    718 S.W.2d 102

Supreme Court of Arkansas
Opinion delivered October 27, 1986
[Rehearing denied December 8, 1986.]

*William A. Lafferty*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. On July 24, 1984, Mark Stone and Lisa Young spent the evening visiting some friends. After leaving the last friend's house, Ms. Young was never seen again. Her mother reported her as a missing person. On July 29, 1984, Brenda Mitchell found Ms. Young's driver's license at Davis Ranch Subdivision in Faulkner County. She turned it over to the police on August 6, 1984, after seeing the missing person posters. She showed the police where she found the license. Some remains of a body were found in that area and were later identified as those of Lisa Young. Mark Stone was arrested and interrogated. He confessed to killing Ms. Young, his brother's girl friend, with a tire tool. He later recanted his confession. After a jury trial, Stone was found guilty of first degree murder and sentenced to 40 years imprisonment. On appeal he raises seven arguments for reversal, which we find meritless and, therefore, affirm his conviction.

Stone's confession to the police reads as follows:

> I left Conway with Lisa Young about 6:00 p.m. on the 24th of July. We went to North Little Rock. We went to the Iron Horse and started drinking and taking pills; they were my pills. They were some kind of downers. We then left there and went to James Paul's house. We had some whiskey that I bought at the liquor store in Levy.
>
> We left James Paul's house and came up the freeway and got off at Cabot. We cut through to Highway 107 and headed towards Vilonia. We turned off 107 at Davis Ranch

Subdivision. We stopped and got out and opened the trunk because I had some beer in the trunk. I was really messed up by this time. I don't really know how I got there.

I lost my keys while I was getting into my trunk. I couldn't find my keys. Lisa got all upset and started screaming and biting and clawing at me. She had a stick or something because she hit me a couple of times with it. We had started smoking another joint, and I dropped it near the truck.

I got the tire tool out of the trunk. She was still on my back. I just swung and hit her. She kept trying to get up and saying that she was going to kill me. I hit her two, three, maybe four times. I got my cigarette lighter and found my keys.

I went towards Vilonia and pulled over and went to sleep for a while. When I woke up, I went to Vilonia and stopped at the car wash. I threw the tire tool out in the field behind the car wash. I then went home.

The confession is significant because it provided three pieces of information which the police did not have at the time. One, it gave the location of the body. A positive identification of the remains had not been obtained at the time. Two, it recited the method of killing. The medical examiner's preliminary observation was that the death was caused by a shotgun blast to the head. The police were operating on this theory. Stone confessed to beating Ms. Young on the head with a tire tool. This information was later confirmed by the state medical examiner's final report—the cause of death was due to multiple blunt trauma to the head. This trauma was hard enough to break the skull. The date of death was determined to be July 24, 1984. Third, the confession provided the police with the location of the murder weapon. Stone stated he threw the tire tool in a field behind the Vilonia car wash. After his confession, he went to the car wash with the police where the murder weapon was recovered. It had blood on it which was later determined to be human blood.

After Stone confessed to the police and signed the statement, one of the officers suggested that Stone tell his parents. His parents went into the interrogation room. When his father asked him if he did it, Stone stated "I guess I did it."

In recanting his confession, Stone said he was protecting his brother whom he suspected of wrongdoing. Stone said that a week after the incident, his brother told him, without any explanation, to get rid of the tire tool in his car. Stone's brother denied this under oath. Stone's story at the trial was that he was with Young until around 11 p.m. when he dropped her off at Protho Junction where she met two men in a black pickup truck. She was going to buy some marijuana. Stone called several witnesses who were at Davis Ranch Subdivision the night in question. They saw the black pickup truck there after midnight. According to one witness, a girl, who resembled Young, was with two men in the truck.

Stone first argues that the confession should have been suppressed because it was obtained by threats. Stone claims that during the questioning, the police officers yelled at him and threatened to throw him "in a tank with a little old commode for eight or nine months. . . ." Stone's father corroborated this testimony. He testified that he stood outside the door and listened while his son was being interrogated. The father testified that one of the officers sounded angry when talking to his son. At one point, he heard one of the officers say that they could put Stone "in a room for eight or nine months if he wanted to and keep him there, and sooner or later he'd do just exactly like he wanted him to." The father stated he kept hearing a slapping sound. He was convinced they were going to hit Stone.

At the hearing on the motion to suppress, both officers testified that no one physically threatened Stone or raised their voice during the interrogation. The trial judge questioned Stone about being threatened. Stone responded that no one hit him, used any physical force against him, or touched him during the interrogation. Stone stated the slapping sound his father heard was one of the officers hitting his own hand with a pen.

When reviewing the admissibility of a confession on appeal, we make an independent determination of the voluntariness of the confession based on the totality of the circumstances, and the trial court's decision will be reversed only if it is clearly against the preponderance of the evidence. *Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1984). A confession based on threats of harm is inadmissible. *Davis* v. *State*, 275 Ark. 264, 630 S.W.2d

1 (1982). Whether or not Stone was threatened is a credibility issue. Since the trial court is able to observe the witnesses as they testify, it is in a superior position to determine their credibility. *Walters v. State*, 267 Ark. 155, 587 S.W.2d 831 (1979). The trial court's decision in this case is not clearly against the preponderance of the evidence.

Stone next argues that the trial court refused to reduce the $50,000 bail or allow Stone to post ten percent of the bail if he could not raise the $50,000. Stone also argues that the county sheriff set the bail terms. The record does not reflect that the trial court authorized a ten percent bond or that the sheriff set the bail terms. Those conversations are not a part of the record. Stone has the duty to provide a complete record from which this court can determine the asserted error. *City of Star City v. Shepherd*, 287 Ark. 188, 697 S.W.2d 113 (1985). Based on the record before us, we find no error.

Stone filed a motion for a change of venue alleging pretrial publicity prejudiced the potential jurors. The motion was made on the basis of a news article which appeared in a local newspaper the Sunday before the trial began on Thursday. The article contained details of Stone's confession. The motion was unsupported by any affidavits as required by Ark. Stat. Ann. § 43-1502 (Repl. 1977). The trial court has complete discretion in granting this motion. *Perry v. State*, 277 Ark. 387, 642 S.W.2d 865 (1982). If it is determined the defendant can receive a fair trial by an impartial jury in the county in which he is being tried, then the motion will be denied. *Orsini v. State*, 281 Ark. 348, 665 S.W.2d 245 (1984). Since Stone failed to attach affidavits to his motion, there is no evidence that the jurors were prejudiced by the pretrial publicity. *Wright v. State*, 267 Ark. 264, 590 S.W.2d 15 (1979). Voir dire revealed no prejudice that would require a reversal. The motion was properly denied.

Stone also moved for a continuance based on the same grounds. The denial of a motion for continuance is within the sound discretion of the trial court. The trial court's ruling will be reversed only if there is an abuse of discretion. *Orsini v. State, supra*. Since Stone did not prove the pretrial publicity prejudiced his case, the trial court properly denied the motion for a continuance.

■ Stone next argues that the trial court should have granted a directed verdict of acquittal. Stone contends without his confession, there was insufficient evidence against him to send the case to the jury. The confession was evidence, and together with other evidence, the trial court properly denied the motion.

■ Stone argues for the first time that the state refused to supply the names of witnesses whose testimony was favorable to Stone's case. These were the witnesses who were at Davis Ranch Subdivision on the night in question and testified for the defense. This argument was not presented to the trial court, and we do not consider arguments raised for the first time on appeal. *Novak* v. *State*, 287 Ark. 271, 698 S.W.2d 499 (1985).

■ A rebuttal witness, who was present in the courtroom during part of the testimony, was called by the state. The defense objected because the court had imposed the rule requiring all witnesses to be excluded from the courtroom during the testimony. However, Stone stated that the testimony was not "particularly detrimental" to his case. Prejudice must exist in order to reverse a conviction. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984).

■ Finally, Stone argues there was insufficient evidence to support the jury's verdict. A review of the evidence shows the evidence was sufficient. He confessed to the crime, and the confession was admissible; he was with Young on the day and evening she disappeared; he located the murder weapon for the police; and his brother disputed the story which Stone told the jury. This evidence and more satisfies the requirement of substantial evidence.

Affirmed.