Michael Eugene MAYFIELD *v.* STATE of Arkansas

CR 87-60                                          736 S.W.2d 12

Supreme Court of Arkansas
Opinion delivered September 28, 1987

*Wm. B. Brady*, for appellant.

*Steve Clark*, Att'y Gen., by: *William F. Knight*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Michael Eugene Mayfield, was convicted of aggravated robbery. He contends the

trial court erred in failing to suppress a statement he made while in police custody because the rights warning he was given failed to inform him that he could have an attorney present even if he could not afford one. We agree that the warning he was given was insufficient to comply with the requirements set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966), and thus we must reverse the conviction. We disagree with the appellant's further contention that the jury was improperly instructed as to the minimum sentence with which he was charged. We discuss the latter point to give direction in the event there is a retrial.

Acting upon information he received in investigating a crime, not the subject of this appeal, Detective Jones of the Little Rock Police Department arrested the appellant for the robbery of an Arby's store. At police headquarters Jones testified he read the appellant his rights from "the standard Little Rock Police rights form." The form used was introduced into evidence at the appellant's trial. It provides, in pertinent part:

> "I have been advised that I am a suspect in a[n] aggravated robbery-theft of property, that I have the right to use the telephone, that I have the right to remain silent, that I have the right to talk with an attorney, either retained by me or appointed by the Court, before giving a statement, and to have my attorney present when answering any questions."

After having signed the rights form, the appellant signed a further statement that he waived his rights and voluntarily made a statement. His statement was a detailed confession to having participated in the robbery with which he was then charged.

In a hearing before the trial, the appellant moved to suppress the confession on the ground that the warning did not comply with the requirements stated in *Miranda* v. *Arizona, supra*. He renewed the objection at the trial when the confession was introduced. The state presented no evidence against the appellant other than the confession. The appellant was convicted and sentenced to imprisonment for ten years which the court had instructed the jury to be the minimum sentence for the offense charged.

## 1. The warning

In *Thomerson v. State*, 274 Ark. 17, 621 S.W.2d 690 (1981), which was also an appeal from a Pulaski County Circuit Court, the advice given the appellant was apparently precisely the same as in the case before us now. The words quoted from the rights warning form in that case are the same as those here. As in this case, Thomerson challenged his conviction on the basis that he had not been informed of his right to counsel even if he were indigent or could not afford an attorney. We affirmed the conviction, citing *Tasby* v. *U.S.*, 451 F.2d 394 (8th Cir. 1971), for the proposition that the language of the warning may deviate from that used by the Supreme Court in the *Miranda* case as long as it "does not negate the over-all effectiveness of the warning." We then discussed the familiar "totality of the circumstances" test for determining the voluntariness of the confession and in the process of that discussion noted that it would be better for the police to inform an accused of his right to counsel without cost. Our opinion in the *Thomerson* case spoke not at all about whether the effectiveness of the warning had indeed been subverted except in the context of discussing the voluntariness of the confession.

Our error in the *Thomerson* case lay in confusing the threshold requirement of a warning with the requirement that a confession, given after a warning, be made voluntarily and upon waiver of the rights of which the accused has earlier been apprised. In *Harryman* v. *Estelle*, 616 F.2d 870 (5th Cir. 1980), an accused was asked a question before any warning whatever had been given, and he gave an incriminating answer. It was argued that the initial question was more of an exclamation by the police officer than a question, and thus in the circumstances the interrogation was not the kind of police questioning the Supreme Court had intended to control in the *Miranda* case. In response, the court said:

> This argument misunderstands *Miranda*. Prior to *Miranda*, the Supreme Court attempted to protect an accused from improper police questioning by holding inadmissible statements that appeared to have been involuntary in light of the totality of their surrounding circumstances, including the characteristics of the accused and the details of the interrogation. *See Schneckloth* v. *Bus-*

*tamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *Spano* v. *New York*, 360 U.S. 315, 321 n.2, 79 S.Ct. 1202, 1206, 3 L.Ed.2d 1265 (1959) (citing 28 cases). Were we to follow such an approach here, we might well find that Harryman's statement was voluntary and therefore properly admitted.

But in *Miranda*, the Court found the totality of the circumstances approach inadequate. Recognizing that in-custody questioning has inherently coercive tendencies, the Court adopted in its place a set of rigid procedural rules. It held that until these rules have been followed, and an accused has been adequately informed of and waived his rights, he may not be questioned. If he is questioned, any statements he makes in response cannot be presented by the prosecution as part of its proof at trial. 384 U.S. at 444-91, 86 S.Ct. at 1612-36. *See Michigan* v. *Tucker*, 417 U.S. 433, 443-44, 94 S.Ct. 2357, 2363, 41 L.Ed.2d 182 (1974).

The rigidity of the *Miranda* rules and the way in which they are to be applied was conceived of and continues to be recognized as the decision's greatest strength. *E.g., Tague* v. *Louisiana*, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980); *Miranda* v. *Arizona*, 384 U.S. at 479, 86 S.Ct. at 1630. *See also Fare* v. *Michael C.*, 439 U.S. 1310, 1314, 99 S.Ct. 3, 5, 58 L.Ed.2d 19 (1978) (Rehnquist, J., on application for stay) (calling rigidity of *Miranda* its "core virtue"). The decision's rigidity has afforded police clear guidance on the acceptable manner of questioning an accused. It has allowed courts to avoid the intractable factual determinations that the former totality of the circumstances approach often entailed. When a law enforcement officer asks a question of an accused and the accused, without the benefit of *Miranda's* safeguards, answers, the totality of the circumstances is irrelevant. The accused's answer is simply inadmissible at trial as part of the prosecution's case in chief. [616 F.2d 870 at 873, 874]

The conviction was affirmed on the basis of the court's determination that the error was harmless due to other overwhelming

evidence of guilt beyond a reasonable doubt. In the case before us now, the only evidence against the appellant was his confession.

While we continue to use the "totality of the circumstances" to test the voluntariness of a confession, *see Smith* v. *State*, 292 Ark. 162, 729 S.W.2d 5 (1987) and *Stone* v. *State*, 290 Ark. 204, 718 S.W.2d 102 (1986), we will not look beyond the warning given to ascertain if the accused knew what his rights were when the confession was made. That is the specific mandate of the Supreme Court in the *Miranda* case and in *Prysock* v. *California*, 453 U.S. 355 (1981) as well.

In *Trotter* v. *State*, 290 Ark. 296, 719 S.W.2d 268 (1986), we took too far the admonition we had given in the *Thomerson* case. There we said a warning which had told the accused he was entitled to counsel even if he could not afford one was insufficient because it did not say he could have an attorney at absolutely no cost to him. We affirmed the conviction because there was evidence that the sheriff had gone beyond the reading of the rights form we found to be inadequate and had in fact informed the accused he was entitled to counsel without charge. In *Smith* v. *State, supra*, we took back our strong language from the *Trotter* case, and we approved a warning which said, "If, you cannot afford a lawyer, one will be appointed for you, before any questioning, if you wish." We noted that in three of the four parts of the *Miranda* case opinion in which the Supreme Court discusses what the warning must be, the language having to do with indigency or "if he cannot afford one" was used. The clear implication was that, while we require that an accused person be told that if he is indigent or cannot afford a lawyer the court will appoint one, there are no "magic words" which have to be used, such as "absolutely without cost to you."

We have no doubt whatever that at the heart of the Supreme Court's opinion is its concern that the indigent accused in police custody be informed that he has just as much right to representation by an attorney as a person who can afford one. The Supreme Court said in the *Miranda* case:

> In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be

appointed to represent him. Without this additional warning the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. [436 U.S. at 473]

. . . . .

He must be warned prior to any questioning that he has the right to the presence of an attorney, *and that if he cannot afford an attorney one will be appointed* for him prior to any questioning if he so desires. [384 U.S. at 479, emphasis supplied.]

In *California* v. *Prysock, supra,* the Supreme Court noted that while the warning need not mimic the language of the *Miranda* decision, it must effectively get across to the accused the right to have retained counsel or appointed counsel if the accused cannot afford an attorney. In the *Prysock* case the Supreme Court reversed a California decision which had held the warning given an accused was insufficient because it did not follow precisely the language used in the *Miranda* decision. The court said, ". . . Miranda itself indicated that no talismanic incantation was required to satisfy its strictures. . . ." (453 U.S. at 359), but in considering whether the information required by the *Miranda* case was given the accused, the court said:

It is clear that the police in this case fully conveyed to respondent his rights as required by *Miranda*. He was told of his right to have a lawyer present prior to and during interrogation, and his right to have a lawyer appointed at no cost if he could not afford one. These warnings conveyed to respondent his right to have a lawyer appointed *if he could not afford one prior to and during the interrogation.* [453 U.S. at 361, emphasis added.]

■■ The warning given in the case before us did not convey to the appellant the fact that he could have a lawyer free of charge. To do that the warning must make some reference to the

indigency of the person being warned in connection with informing him that an attorney will be appointed for him. While we are not holding that specific words are required, we suggest it would be very simple for the warning to say that the person being warned has the right to have an attorney present and that he may either retain one himself or, if he cannot afford one, have one appointed by the court.

## 2. *The instruction*

The trial court instructed the jury that the minimum sentence for aggravated robbery was ten years imprisonment. The appellant contends that was error because the minimum sentence for that offense is six years. The contention of the appellant is based upon Ark. Stat. Ann. § 41-2102(3)(a) (Supp. 1985) which says, "Upon pleading guilty or being found guilty the first time of aggravated robbery with a deadly weapon, such person shall be imprisoned for no less than six (6) years." The instruction, and the state's position here, is based on subsection (2) of that statute which says, "Aggravated robbery is a class Y felony." Ark. Stat. Ann. § 41-901 (Supp. 1985) provides that a defendant convicted of a class Y felony shall be sentenced to not less than ten years and not more than forty years, or life.

We agree with the state's position on this point. Section 2102 of Act 280 of 1975 made aggravated robbery a class A felony with no further specification as to punishment. In 1979, the general assembly passed Act 1118 amending § 2102 of Act 280 of 1975 to provide:

(2) Except as provided in subsection (3) below, aggravated robbery is a Class A felony.

Subsection (3) then provided the specific penalties which are now contained in Ark. Stat. Ann. § 41-2102(3), the first of which provides:

(a) Upon pleading guilty or being found guilty the first time of aggravated robbery with a deadly weapon, such person shall be imprisoned for not less than six (6) years. . . .

In 1981, the general assembly adopted Act 620, § 13 of which provided:

> Subsection (2) of Section 2102 of Act 280 of 1975, the same being Arkansas Statute 41-2102(2), is hereby amended to read as follows: "(2) Aggravated robbery is a class Y felony."

The general assembly thus made the offense a class Y felony and abolished the exception for subsection (3) of Act 280 of 1975 as amended by Act 1118 of 1979. This brought into conflict subsections (2) and (3) of the statute as it is presently codified. Subsection (2) makes aggravated robbery a class Y felony without exception. Subsection (2) was enacted subsequent to the provisions of subsection (3). Section 18 of Act 620 of 1981 provided, "All laws and parts of laws in conflict with this Act are hereby repealed." Subsection (2) was in § 13 of that Act, thus subsection (3) has been repealed. While we might simply say that the later of two conflicting acts will be considered to have repealed the former, *see Price* v. *State*, 284 Ark. 148, 685 S.W.2d 506 (1985), we need not rely on that doctrine in view of the repealer clause.

Reversed.

HICKMAN and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. If this appellant were misled by the wording of the Miranda warning as given in this case and left in doubt as to his right to be represented by a lawyer, I might agree with the majority. But he makes no such claim. In *Thomerson* v. *State*, 274 Ark. 17, 621 S.W.2d 690 (1981), the same argument now made was considered on an *identical* set of facts, and unanimously rejected. I believe we should adhere to our recent precedent.