Jonas Hoten WHITMORE II v. STATE of Arkansas

CR 87-168 756 S.W.2d 890

Supreme Court of Arkansas
Opinion delivered September 19, 1988

310

*Gordon L. Humphrey, Jr.*, and *Neal Kirkpatrick*, by: *Neal Kirkpatrick*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant, Jonas Whitmore II, was convicted of capital murder and sentenced to death by lethal injection. There is no need to detail the facts since the appellant does not question the sufficiency of the evidence to support either the verdict on guilt or on penalty. His arguments on appeal are that the trial court erred (1) in failing to exclude his incriminating statements in the guilt/innocence phase of the trial

and (2) in failing to exclude evidence of a twenty-three-year-old conviction as an aggravating circumstance in the penalty phase of the trial. The trial court did not err in either ruling, and we affirm the judgment of conviction.

## I.

Appellant's first argument is that he was not properly advised of his *Miranda* rights, and the trial court erred in refusing to suppress his statements. For clarity of this opinion, we divide the point into its four sub-points.

(a) Appellant argues that the *Miranda* statements of rights given him by the police officers did not specifically warn him that if he could not afford a lawyer one would be appointed for him at no cost. *See Mayfield* v. *State*, 293 Ark. 216, 222-23, 736 S.W.2d 12, 15 (1987), *cert. denied*, ___ U.S. ___, 108 S. Ct. 1076 (1988). The argument has no factual basis.

The appellant was given two separate warnings before he gave his first incriminating statement. The first, given by F.B.I. Special Agent John Munis provided in pertinent part: "If you cannot afford a lawyer, one may be appointed for you before questioning, or at any time during questioning, if you so desire." In response, appellant expressly waived his right to a lawyer by acknowledging in pertinent part: "I am ready and willing to answer questions or to make a statement without first consulting with a lawyer or without having a lawyer present during questioning."

The second warning, given by Investigator Russell Welch of the Arkansas State Police provided: "Do you understand that if you cannot afford a lawyer, one will be appointed for you by the court before any questioning if you so desire?" Appellant's response was "Yes." The warnings together were sufficient to notify the appellant that if he could not afford a lawyer one would be appointed for him at no cost.

(b) Appellant next argues that the second *Miranda* warning was invalid because it was given at 3:00 a.m. when he was "in a condition of less than full awareness." We could perfunctorily dispose of this argument by pointing out that the first warning was given at 5:15 p.m. the previous afternoon. However, we

choose to discuss the matter, because the fact that a warning is given at 3:00 a.m. does not, as a matter of law, subject it to the exclusionary rule.

On September 22, 1986, Sheriff James Carmack of Montgomery County called the Sheriff of Musselshell County, Montana, and told him that he thought the appellant was in Musselshell County and that the appellant was wanted in Montgomery County for capital murder. Sheriff Carmack and investigators Russell Welch and Jack Ursery of the Arkansas State Police then left Montgomery County and began driving to Musselshell County, Montana. The appellant was arrested at about 5:00 p.m. on September 23 by the Musselshell County Sheriff and Special Agent John Munis of the F.B.I. The appellant was immediately given the first *Miranda* warning by the F.B.I. agent. Sheriff Carmack and the investigators from the Arkansas State Police arrived in Musselshell County, Montana, at about 10:00 p.m. on September 23. They first saw the appellant at the jail in Roundup, Montana, at about 3:00 a.m. on September 24. The Arkansas officers testified that they could have waited until later in the morning to warn the appellant, but they thought the sooner they gave the *Miranda* warnings the better it would be. There was no showing that they had any iniquitous purpose in waiting until 3:00 a.m., and they did not attempt to interrogate the appellant at that time. Since the police did not violate the *Miranda* procedural rules, and were not guilty of any police misconduct, the trial court correctly refused to apply the exclusionary rule on the basis of *Miranda*. Further, since the appellant did not give the statement until September 26, we are not concerned with the totality of the circumstances at 3:00 a.m. on September 24 in order to test the voluntariness of the statement. For a detailed discussion of the distinction between violations of the *Miranda* procedural rules and a determination of the voluntariness of a confession, see *Mayfield* v. *State*, 293 Ark. 216, 736 S.W.2d 12 (1987), *cert. denied*, ___ U.S. ___, 108 S. Ct. 1076 (1988).

(c) Appellant next contends that the trial court should have applied the exclusionary rule because the *Miranda* warning given by the Special Agent of the F.B.I. was occasioned by the federal charge of unlawful flight and not by the capital murder warrant from the State of Arkansas. Again, we could summarily dismiss

the argument by reciting that the latter warning given by the Arkansas officers was occasioned by the Arkansas warrant, but we decline to base our decision on such a factual matter.

 It is not a violation of the rather rigid *Miranda* rules for the police to give one valid warning and then question the suspect about two or more different crimes. *Hall* v. *State*, 242 Ark. 201, 412 S.W.2d 603 (1967). Further, and distinguished from the argued police violation of the *Miranda* rules, a suspect's awareness of all the different charges in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege. *Colorado* v. *Spring*, 479 U.S. 564 (1987).

 (d) As previously set out, *Miranda* warnings were given to appellant in Montana at 5:15 p.m. on September 23 and at 3:00 a.m. on September 24. No further *Miranda* warnings were given. On September 26, during the automobile trip back to Arkansas, appellant gave an incriminating statement to the Arkansas officers. After arriving in Arkansas the appellant gave another incriminating statement on September 27, and another on the 28th. Appellant now argues that all three incriminating statements should be excluded because of police misconduct in not re-warning him before each statement. We could dispose of the argument by pointing out that it is undisputed that the statements on the 26th and the 27th were spontaneous. In fact, the appellant was so talkative while in police custody that his attorney asked to be excused from defending him because he constantly ignored the attorney's advice not to talk to the police. A suspect's spontaneous statement, although made in police custody, is admissible against him. *Scherrer* v. *State*, 294 Ark. 287, 290-91, 742 S.W.2d 884, 885-86 (1988). However, even if the statements were not spontaneous, they would be admissible. In a case with facts almost identical to the ones at bar, we held the *Miranda* rules were not violated when a prisoner was given the *Miranda* warnings, made a spontaneous statement on the return trip to Arkansas, and was then questioned three or four days later without a new warning being given. *O'Neal* v. *State*, 253 Ark. 574, 487 S.W.2d 618 (1972). On the other hand, we have applied the exclusionary rule when the prisoner was warned, but the questioning did not take place until three months later. *Scott* v. *State*, 251 Ark. 918, 475 S.W.2d 699 (1972). The rationale for

both cases is that the police must give the *Miranda* warning at a time close enough to the interrogation for the suspect to know that he is free to exercise his privilege at that point in time.

## II.

The appellant next argues that the trial court erred in allowing a conviction dating from 1963 to be introduced into evidence as an aggravating circumstance during the penalty phase of the trial. For clarity, we divide the argument into sub-parts.

(a) He first argues that there was no substantial evidence to support the jury's finding that the 1963 conviction was an aggravating circumstance because the judgment of conviction did not state that he used or threatened violence and, in fact, it recites that he was not armed with a dangerous weapon.

The argument is without merit for two reasons. First, the crime for which the appellant was convicted under Section 211 of the California Penal Code could not have been committed in California in 1963 without the use of fear or force against the person of another. Thus, the threat of violence is inherent in the definition of the crime. *See Henderson* v. *State*, 281 Ark. 406, 410-11, 664 S.W.2d 451, 454 (1984). In California, attempted robbery is a crime of violence. *People* v. *Thompson*, 175 Cal. App. 3d 1012, 1220, 221 Cal. Rptr. 282, 287 (1986). Our interpretation of the California definition of the crime of attempted robbery in the first degree is confirmed by appellant's answer to the prosecutor's question on cross-examination:

> Q. All right. Going back to the attempted robbery in California, is it not true that you were sitting in the back seat of a taxi, that you hit the driver over the head with a sixteen ounce Royal Crown Cola bottle and then ran?
>
> A. No sir. It was not a Royal Crown bottle. It was a Coca Cola bottle.

Secondly, the recitation in the judgment that he was not armed with a deadly weapon related to whether enhanced punishment should be applied, and not to whether he used fear or force in committing the offense. Cal. Penal Code § 211 (Deering

1985); Cal. Penal Code § 969c (Deering 1983); Cal. Penal Code § 3024 (since repealed); and *State* v. *Evans*, 147 Ariz. 57, 708 P.2d 738 (1985).

(b) Appellant next argues that a twenty-three-year-old conviction was too old to be probative of appellant's predisposition for violence, and its use violated fundamental fairness and due process.

The legislature has specifically set out those things which can be considered as aggravating circumstances, Ark. Code Ann. § 5-4-604 (1987), and those which can be considered as mitigating circumstances, Ark. Code Ann. § 5-4-605 (1987). Evidence of both types of circumstances is designed to give the jury a complete history of the defendant's life in order to better allow the jury to determine whether the defendant should be given a sentence of death, or a sentence of life imprisonment without parole. Ark. Code Ann. § 5-4-602 (1987).

One of the aggravating circumstances which can be proven is that a defendant has "previously committed another felony, an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person." Ark. Code Ann. § 5-4-604(3) (1987). The legislature intentionally did not provide a time limitation on the past offense. Ark. Code Ann. § 5-4-602 provides: "In determining sentence, evidence may be presented to the jury as to *any matters* relating to aggravating circumstances enumerated in § 5-4-604. . . ." (Emphasis added.)

In his brief, the appellant does not tell us why he thinks that the statute allowing the jury to hear evidence of a defendant's complete life during the penalty phase of a bifurcated trial violates due process. He gives us no citations of authority for the proposition, and no reason is readily apparent to us. Thus, we do not consider the issue. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

(c) Ark. Code Ann. § 5-4-602(4) provides that in determining the sentence, evidence concerning mitigating circumstances may be presented regardless of the rules of evidence, but "evidence relevant to the aggravating circumstances . . . shall be governed by the rules governing the admission of evidence. . . ."

From that basis the appellant argues that the trial court erred in allowing the twenty-three-year-old conviction in evidence because A.R.E. Rule 609 prevents the use of prior convictions if more than 10 years has elapsed since the date of the prior conviction. The argument misinterprets the purpose of Rule 609 and the purpose of the aggravating circumstances statute, Ark. Code Ann. § 5-4-604(3).

A.R.E. Rule 609 prevents the use of prior convictions more than 10 years old for impeachment purposes. It is based upon the concept that a crime committed more than 10 years ago is no longer probative of a witness's truthfulness at the time of trial.

On the other hand, the aggravating circumstances statute Ark. Code Ann. § 5-4-604 (1987), is not concerned with the defendant's character at the time of trial, for the jury already knows the defendant has just recently committed a murder. Instead, this statute is concerned with disclosing whether the defendant's history establishes such a propensity for violence that it will reoccur. Once the jury knows about a defendant's past propensity for violence, it can weigh that against any mitigating circumstances. In striking this balance the jury determines if the defendant has such a marked propensity for violence that it would likely manifest itself again in the future. If the jury determines beyond a reasonable doubt that the defendant will strike again, it may sentence him to death. Given the special perspective of a jury in the sentencing phase of a capital trial, a twenty-three-year-old violent felony conviction is highly relevant. *People* v. *Christiansen*, 116 Ill. 2d 96, 506 N.E.2d 1253, *cert. denied*, ___ U.S. ___, 108 S. Ct. 208 (1987). Therefore, A.R.E. Rule 609 does not prevent the introduction of felony convictions more than 10 years old to show a propensity to violence in the penalty phase.

III.

Pursuant to Rule 11(f) of the Rules of the Supreme Court and Court of Appeals of the State of Arkansas, we have made our own examination of the record and find no prejudicial error on points objected to below, but not raised in this appeal.

Finally, we must compare the wickedness, inhumanity, and heinousness of this capital case with other capital cases.

Here, the victim was stabbed 10 times, her throat was cut, and there was an "X" marked on the side of her face. One hundred twenty-six dollars ($126.00) was taken from a kitchen drawer and one hundred fifty dollars ($150.00) was taken from the victim's purse. The robbery-murder of the victim in this case is similar to the robbery-murders in *Fretwell* v. *State*, 289 Ark. 91, 708 S.W.2d 630 (1986), and *Woodard* v. *State*, 261 Ark. 895, 553 S.W.2d 259, *cert. denied*, 439 U.S. 1122 (1977), that were punished with the death penalty. The death penalty in the instant case was not freakishly or arbitrarily applied.

Affirmed.