Shawn WILKERSON *v.* STATE of Arkansas

CR 05-1187                                      229 S.W.3d 896

Supreme Court of Arkansas
Opinion delivered February 23, 2006

*William R. Simpson, Jr.*, Public Defender, *Bret Qualls*, Deputy Public Defender, by: *Erin Vinett*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

Annabelle Clinton Imber, Justice. Appellant Shawn Wilkerson ("Wilkerson") was convicted of capital murder and sentenced to life imprisonment. He now contends on appeal that the circuit court erred in failing to suppress his custodial statement. Wilkerson specifically claims that the warning given pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), failed to inform him that he could have an attorney present if he could not afford one. We find no error and affirm.

The record reveals that Wilkerson and his wife, Lacey, relocated to Little Rock from Texas to live temporarily with

Lacey's father. When things did not work out with Lacey's father, the couple moved out of the house. As a result, they ended up living in their Ford Explorer and staying briefly in inexpensive hotels. During their time in Arkansas, the Wilkersons befriended some people at a homeless camp at the intersection of Rodney Parham and Interstate 430. One specific person that Wilkerson met was Michael Bayse, a.k.a. "Socks." On a particular evening, Wilkerson took Socks to an intersection for the purpose of "flying a sign," whereby he would hold up a sign and ask those driving by for money or food. Upon arriving at the location, Wilkerson and Socks noticed that Donald Francis Honeycutt was already at that location "flying his sign." The three men ended up in a territorial dispute over who would get to "fly a sign" at that location. The dispute degenerated into a fight. The undisputed facts indicate that Wilkerson and Socks beat Mr. Honeycutt and stripped him naked. The two then left but returned later and resumed beating him. During this second beating, Wilkerson took a knife and severed Mr. Honeycutt's penis. Approximately two weeks later, the Little Rock Police Department received a call reporting a dead body at the southeast corner of the I-430 and Rodney Parham Road intersection.

In the course of an investigation by law enforcement officials, Wilkerson became a suspect in the case, and information concerning his whereabouts indicated that he had moved back to Texas. Several Little Rock police officers traveled to Texas for the purpose of questioning Wilkerson about Mr. Honeycutt's murder. Upon arriving there, the officers discovered that Wilkerson had been arrested by Texas authorities on an unrelated robbery charge. Texas police officers *Mirandized* Wilkerson first on the robbery charge and proceeded to question him about the robbery. Thereafter, the Little Rock police officers *Mirandized* Wilkerson again and questioned him about Mr. Honeycutt's murder. Wilkerson eventually confessed to the murder.

Upon being charged with capital murder, Wilkerson filed a motion to suppress his custodial statement, contending that he was "not adequately informed of his rights of self-incrimination nor of his right to free legal counsel before making any statement." At the pretrial hearing, Wilkerson specifically argued that the warning he was given failed to inform him that he could have an attorney present if he could not afford one. The circuit court denied the motion to suppress.

At trial, Wilkerson did not dispute his involvement in the murder; rather, he merely argued that he should not be found guilty of capital murder. In other words, his whole defense at trial was focused on persuading the jury to find him guilty of a lesser-included offense. The jury, however, found Wilkerson guilty of capital murder, and he was sentenced to life imprisonment. Wilkerson now brings this appeal. We have jurisdiction of this case as it is a criminal appeal where the sentence of life imprisonment has been imposed. Ark. Sup. Ct. R. 1-2(a)(2) (2005).

Wilkerson's sole point on appeal is that the circuit court erred in failing to suppress his custodial statement because he was not properly advised before giving the statement that he could have an attorney present if he could not afford one. In other words, due to the alleged failure of the officers to properly advise him of his rights before he confessed to the murder, Wilkerson contends he was unable to knowingly and intelligently waive his rights.

The inquiry into waiver has two distinct dimensions. *Mauppin v. State*, 309 Ark. 235, 831 S.W.2d 104 (1992) (citing *Colorado v. Spring*, 479 U.S. 564 (1987) & *Moran v. Burbine*, 475 U.S. 412 (1986)). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* at 246, 831 S.W.2d at 109 (citing *Moran v. Burbine*, 475 U.S. at 421). "Involuntary confession" jurisprudence is concerned with governmental intimidation, coercion, or deception. *Id.* at 247, 831 S.W.2d at 110 (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)). Such governmental overreaching is not at issue in this case, and we do not discuss it further.

"Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (citing *Moran v. Burbine*, 475 U.S. at 421). In *Colorado v. Spring*, 479 U.S. 564, 574 (1987), the Supreme Court stated: "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Id.* (citing *Moran v. Burbine*, 475 U.S. at 422 & *Oregon v. Elstad*, 470 U.S. 298, 316-17 (1985)). The Fifth Amendment's guarantee is both simpler and more fundamental: A defendant may not be compelled to be a witness against himself in any respect. *Mauppin v. State, supra.* The *Miranda* warnings protect this privilege by ensuring that a suspect knows that he or she may choose not to talk

to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time. *Id.* The *Miranda* warnings ensure that a waiver of these rights is knowing and intelligent by requiring that the suspect be fully advised of this constitutional privilege, including the critical advice that whatever he chooses to say may be used as evidence against him. *Id.*

"Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Mauppin v. State*, 309 Ark. at 247, 831 S.W.2d at 110 (citing *Moran v. Burbine*, 475 U.S. at 421). As to the "totality of the circumstances," the appellate standard of review mandates an inquiry into the defendant's "age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Id.* (citing *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). Thus, a court must look at the totality of the circumstances to determine whether the State proved that a defendant had the requisite level of comprehension to waive his Fifth Amendment rights. The trial court's ruling will only be reversed if its ruling is clearly against the preponderance of the evidence. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003).

In support of the argument that he did not voluntarily waive his rights, Wilkerson primarily relies on this court's decision in *Mayfield v. State*, 292 Ark. 216, 736 S.W.2d 12 (1987). In that case, the appellant contended, much as Wilkerson does in this case, that the warning he received prior to his confession failed to apprise him that he could have an attorney present if he could not afford one. Notably, the rights form used in the *Mayfield* case stated:

> I have been advised that I am a suspect in a[n] aggravated robbery-theft of property, that I have the right to use the telephone, that I have the right to remain silent, that I have the right to talk with an attorney, either retained by me or appointed by the court, before giving a statement, and to have my attorney present when answering my questions.

*Mayfield v. State*, 293 Ark. at 218, 736 S.W.2d at 13. We concluded that the appellant was correct, in that he could not tell from the face of the form that he was entitled to an attorney if he could not afford

one. *Mayfield v. State, supra.* In so holding, we stated that the U.S. Supreme Court's decision in *Miranda v. Arizona,* 384 U.S. 436 (1966), mandates that a person "must be warned prior to any questioning that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires." *Mayfield v. State,* 293 Ark. at 222, 736 S.W.2d at 15 (citing *Miranda v. Arizona,* 384 U.S. at 479 (emphasis added). Moreover, we noted that the Supreme Court later held that, while the warning need not mimic the language of the *Miranda* decision, it must effectively get across to the accused the right to have retained counsel or appointed counsel. *Id.* (citing *California v. Prysock,* 453 U.S. 355 (1981)). Accordingly, we concluded in the *Mayfield* case that the warning did not adequately convey to the appellant that he was entitled to a lawyer if he could not afford one.

In the instant case, the record indicates that Wilkerson was given two separate *Miranda* warnings — one for the Texas robbery charge and one for the Arkansas murder charge. As noted by the State, Wilkerson's argument only challenges the adequacy of the Texas warning and not the adequacy of the Arkansas warning. The Texas warning stated as follows:

> 1. I have the right to have a lawyer present to advise me either prior to or during any questioning.
>
> 2. If I am unable to employ a lawyer, I have the right to have a lawyer appointed to counsel with me prior to or during any questioning, and
>
> 3. I have the right to remain silent and not make any statement at all and that any statement that I make may and probably will be used in evidence against me at my trial.
>
> 4. I have the right to terminate the interview at any time.

As set forth above, the Texas form indicates that "[i]f . . . unable to employ a lawyer, [suspects] have the right to have a lawyer appointed to counsel . . . prior to or during any questioning." While this warning does not mimic the language of the *Miranda* decision, it effectively gets across to the accused the right to have retained counsel or appointed counsel by prefacing the above-cited sentence with "If I am unable to employ a lawyer." *Mayfield v. State, supra* (citing *California v. Prysock,* 453 U.S. 355 (1981)). Thus, under our case law,

we conclude that the warning set out in the Texas form is adequate to meet the standard set forth in *Mayfield v. State, supra.*

Moreover, the totality of the circumstances indicate that Wilkerson knowingly and intelligently waived his rights. Before questioning, the Arkansas police officers *Mirandized* Wilkerson with an Arkansas warning form, which stated in part:

> 1. You have the right to remain silent.
>
> 2. Anything you say can and will be used against you in a court of law.
>
> 3. You have the right to talk to a lawyer and have him present with you while you are being questioned.
>
> 4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning at no cost to you, if you wish.
>
> 5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

Wilkerson does not dispute that the plain language used in this form clearly explains his right to have an appointed lawyer, free of charge, present during questioning. Instead, he argues that, despite being given adequate *Miranda* warnings set out in the Arkansas form, the combination of the Arkansas and Texas warnings left him confused about his rights. As noted earlier, the Texas warning was sufficient under *Mayfield v. State, supra.* However, even if that warning were not sufficient, the record shows that Wilkerson still knowingly and intelligently waived his rights at the time he confessed to the murder because the Arkansas police officers properly advised him of his rights. According to the transcript of the custodial statement, the following colloquy occurred between the investigator and Wilkerson:

> INVESTIGATOR: ... Mr. Wilkerson, earlier at 2019 hours I used the standard Little Rock Police Department Miranda Rights form to advise you that (sic) were a suspect in a capital murder and then we finished that at 2022 and then we started talking about a homicide that occurred in Little Rock. We found a body this past Wednesday night, and you told us about that. Is that correct?

WILKERSON: Yes, sir.

INVESTIGATOR: Okay. I just want to go back over the rights form with you. It says you're a suspect in a capital murder (sic). Before asking you any questions, we want to advise you of your rights. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have a right to talk to a lawyer and have him present with you while you're being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning at no cost to you if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements. Do you understand what I read to you?

WILKERSON: Yes.

INVESTIGATOR: Is that your signature?

WILKERSON: Yes, it is.

INVESTIGATOR: Okay. And you can read and write?

WILKERSON: Yes, I can.

INVESTIGATOR: Is that your initial?

WILKERSON: Yes, sir.

INVESTIGATOR: And you've completed the 9th grade?

WILKERSON: Yes, I did.

INVESTIGATOR: Is that your initial?

WILKERSON: Yes, it is.

INVESTIGATOR: Where'd you complete the 9th grade at?

WILKERSON: Plummersville, Texas.

INVESTIGATOR: Okay. I want to go back over oh, the waiver of rights. It says I have read the above statement

of my rights, and I fully understand each and every right. No promises or threats have been made to induce me into making this statement. With full knowledge of my rights, I hereby waive those rights and agree to answer questions concerning the offense which I am suspected of committing. You understand those rights?

WILKERSON: Yes.

INVESTIGATOR: Okay. Is that your signature?

WILKERSON: Yes.

Thus, as demonstrated by Wilkerson's own admission, the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension by Wilkerson. The circuit court was therefore justified in concluding that Wilkerson knowingly and intelligently waived his *Miranda* rights.

Finally, Wilkerson likens this case to the facts set forth in *Missouri v. Seibert*, 542 U.S. 600 (2004). In that case, the interrogating officer made a conscious decision to resort to an interrogation technique in which he would elicit a prewarning statement from the defendant, then give the *Miranda* warnings, and then obtain a second statement that would be " 'largely a repeat of information . . . obtained' prior to the warning." *Missouri v. Seibert*, 543 U.S. at 606. The Supreme Court concluded that in such circumstances a midstream recitation of warnings after interrogation and unwarned confession rendered the *Miranda* warnings ineffective. *Id.* at 604. More specifically, as explained by the Supreme Court, "[t]hese circumstances must be seen as challenging the comprehensibility and efficacy of the *Miranda* warnings to the point that a reasonable person in the suspect's shoes would not have understood them to convey a message that she retained a choice about continuing to talk." *Id.* at 617.

The facts in this appeal are significantly different from the facts in *Missouri v. Seibert, supra.* In *Seibert*, the police elicited a confession, followed with the *Miranda* warnings, and then obtained a second statement from the suspect by covering the same ground a second time. Here, Wilkerson never gave a statement before he was *Mirandized.* In fact, Wilkerson even admitted that he was given *Miranda* warnings before each confession. These facts differ markedly from *Seibert*, where the defendant incriminated herself prior to

receiving *Miranda* warnings, and the second statement was merely an attempt to elicit those *same* statements lawfully. Consequently, we are not persuaded by Wilkerson's argument on appeal. The circuit court's denial of Wilkerson's motion to suppress is affirmed.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Wilkerson, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed.