Larry LANDRUM *v.* STATE of Arkansas

CR 96-494                                     936 S.W.2d 505

Supreme Court of Arkansas
Opinion delivered December 23, 1996

*Booth & Honeycutt, P.L.C.,* by: *J. Marvin Honeycutt,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Sandy Moll,* Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Larry Landrum was convicted of the murder of Lucille Hassler and sentenced to life imprisonment. He does not question the sufficiency of the evidence, so we need not recite the details of the crime. Landrum's sole argument is that the trial court erred in refusing to suppress his confession because there was an unreasonable delay in his arraignment. The argument is without merit, and we affirm the judgment of conviction.

Landrum, a habitual criminal, was arrested on the afternoon of December 12, 1994, on an unrelated series of crimes involving the attempted rape and aggravated assault of Kristie Anderson and the theft of her property. Shortly after his arrest, he was given a *Miranda* warning and gave an exculpatory statement. He was taken to jail and scheduled to be arraigned on these charges at 8:30 a.m., December 14.

On the next afternoon, December 13, at about 4:30, Landrum was again given a *Miranda* warning and questioned about a second unrelated murder, the murder of Melissa Witt. After approximately thirty minutes of questioning about the Witt murder, the officers again informed Landrum of his *Miranda* rights and asked him some questions about this case, the murder of Lucille Hassler. Landrum made no admissions about the Hassler murder, but his body language raised the officers' suspicions.

Investigator Pittman, one of the officers who was questioning Landrum, asked Landrum if he wanted to take a polygraph examination, and he responded affirmatively. The polygraph examiner, Investigator Brett Pritchard, arrived between 7:30 and 8:00 that same night, December 13, and again gave appellant a *Miranda* warning. After Landrum completed the examination, he was told that the results were bad. Landrum told the examiner that he wanted to speak privately with Officer Dale Best. Best, a State Police Lieuten-

ant, was contacted, and he went to the jail and talked to appellant from 10:25 to 11:45 that night. Landrum told Best that he would discuss the details of the Hassler murder if he knew what to expect from the prosecuting attorney. Officer Best asked Landrum if he wanted him to contact the prosecuting attorney that night or wait until the next morning. Landrum answered that he was tired and wanted to wait until the next morning.

Officer Best contacted the prosecuting attorney's office and, at 7:50 on the morning of the 14th, returned to the jail to talk to Landrum. Landrum admitted to Best that he had killed Ms. Hassler. A deputy prosecutor arrived and went over the charges that would be filed in the Hassler murder, agreed not to seek the death penalty, and agreed the sentences could be run concurrently with others Landrum was to receive. At 8:35 Landrum was again informed of his *Miranda* rights, and he gave a taped statement in which he confessed to the Hassler murder. The statement was concluded at 9:14 that morning.

Landrum was making a confession in this case, the Hassler murder, at 8:30 on the morning of the 13th, and therefore was not taken to his scheduled arraignment on the Anderson charges. In the appeal of this case Landrum contends that the trial court erred in admitting his confession in the Hassler murder because if he had been taken before a judicial officer in the Anderson case at 8:30 on the morning of the 13th, as scheduled, an attorney would have been appointed for him in the Anderson case and the attorney would have advised him not to make a confession in the Hassler case.

Landrum's argument is without merit. There is no connection between the delay in the arraignment in the Anderson case and the resulting appointment of counsel for that case, and Landrum giving his statement confessing to the murder in this case. The purpose of the exclusionary rule is to deter police misconduct, and there was no police misconduct.

Rule 8.1 of the Arkansas Rules of Criminal Procedure provides: "An arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay." In *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987), we explained the reasons for Rule 8.1:

It has been recognized that in addition to the purpose

of guarding against the coercive influence of custodial interrogation, the rule insures that the accused is placed in early contact with a judicial officer so that protections covered by preliminary arraignment are afforded without delay, that the right to counsel may be clearly explained and implemented upon the accused's request and that the accused is protected from being held incommunicado for protracted periods of time.

*Id.* at 528, 726 S.W.2d at 656 (citations omitted). In *Bolden v. State*, 262 Ark. 718, 561 S.W.2d 281 (1978), we stated that Rule 8.1 is designed to "afford an arrestee protection against unfounded invasion of liberty and privacy." *Id.* at 724, 561 S.W.2d at 284. If an unnecessary delay in arraignment occurs, statements given by the accused are not automatically excluded; rather, the court considers whether the statement is prejudicial and whether it is reasonably related to the delay. *Duncan*, 291 Ark. at 529, 726 S.W.2d at 657.

In the present case, there was no unnecessary delay in arraigning Landrum on the Hassler charge. The officers first questioned him about the Hassler murder at 5:00 on the afternoon of December 13, 1994. He had been informed of his *Miranda* rights three times when the officers questioned him about the Hassler murder. He was again informed of his *Miranda* rights before he took the polygraph examination on the evening of December 13. After doing poorly on the polygraph examination, he asked to speak with Officer Best alone, and his request was honored. Landrum told Officer Best that he would talk about Ms. Hassler's disappearance if he could talk with the prosecuting attorney's office first so that he would know what to expect. He specifically asked that Officer Best wait until the morning of December 14, 1994, to contact the prosecuting attorney's office. Officer Best complied with Landrum's request, concluding the interview at that time and not contacting Landrum again until the morning of December 14. On the morning of December 14, 1994, less than twenty-four hours after the officers first questioned him regarding the disappearance and death of Ms. Hassler, Landrum confessed to the crime. There was no unnecessary delay between the time the officers first questioned Landrum about the Hassler murder and the time he confessed. Most important, no police misconduct occurred during the incarceration of Landrum, and therefore, there is no policy reason for us to apply the exclusionary rule to Landrum's statement.

■ The purpose of the exclusionary rule is to deter police misconduct. In *Scherrer v. State*, 294 Ark. 287, 742 S.W.2d 884 (1988), we quoted *Beed v. State*, 271 Ark. 526, 609 S.W.2d 898 (1980), in explaining that the purpose of *Miranda* and its progeny was to inhibit police misconduct, not the making of incriminating statements. *Id.* at 291, 742 S.W.2d at 886. Similarly, in *Whitmore v. State*, 296 Ark. 308, 756 S.W.2d 890 (1988), we affirmed the trial court's ruling denying the defendant's motion to suppress his statements, stating in part, "Since the police did not violate the *Miranda* procedural rules, and were not guilty of any police misconduct, the trial court correctly refused to apply the exclusionary rule on the basis of *Miranda*." *Id.* at 312, 756 S.W.2d at 892. In *Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994), we affirmed the admission of the defendant's confession. In doing so, we discussed the case of *Colorado v. Connelly*, 479 U.S. 157 (1986), stating that the United States Supreme Court held that "coercive police activity is a necessary predicate to finding a confession involuntary within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 558, 869 S.W.2d at 689.

■ We have also explained the purpose of the exclusionary rule in the context of the Fourth Amendment. In *Allen v. State*, 277 Ark. 380, 641 S.W.2d 710 (1982), we reversed the judgment on an unrelated ground while agreeing with the trial court that the defendant's confession was admissible. The defendant argued that the warrant for his arrest was technically illegal, and thus his arrest was illegal, and that his confession should have been suppressed as fruit of the poisonous tree. We rejected the argument and wrote that *Brown v. U.S*, 422 U.S. 590 (1975), "mandates an evaluation of each case in the light of the policy served by the exclusionary rule, that is, deterring lawless conduct by officers by removing the incentive to disregard those laws" in determining whether statements made after an illegal arrest should be suppressed. *Id.* at 386, 641 S.W.2d at 714. We did not determine whether the warrant was illegal because a warrant was not constitutionally required to arrest the defendant. We wrote:

> The illegality of the warrant here served no quality of purposefulness. There was no misuse of power to gain the confession. The police gained no advantage by use of the invalid warrant. The police should not be penalized for attempting to afford an unnecessary procedural safeguard to appellant.

Therefore there is no policy reason to apply the exclusionary rule under the Fourth Amendment.

*Id.* at 386, 641 S.W.2d at 714. *See also Collins* v. *State*, 304 Ark. 587, 804 S.W.2d 680 (1991); *Moore* v. *State*, 303 Ark. 514, 798 S.W.2d 87 (1990).

■ In the present case, the police repeatedly advised Landrum of his rights and honored his various requests. Landrum gave his confession at the time that he was scheduled to be arraigned on the Anderson charges because he requested that Officer Best wait until the morning of the 14th to have the prosecuting attorney's office talk to him. Since there is no evidence of police misconduct, there is no reason to exclude appellant's statement.

■■ The fact that Landrum would have been appointed an attorney in the Anderson matter had he been arraigned on December 14, 1994, is not reason to exclude his statement in the present case. In *McNeil* v. *Wisconsin*, 501 U.S. 171 (1991), the United States Supreme Court addressed whether an accused's request for counsel at a first appearance on a charged offense constituted an invocation of his Fifth Amendment right to counsel on unrelated and uncharged offenses, thus precluding police-initiated interrogation on the unrelated matters. In explaining that the Sixth Amendment right to counsel is offense specific, the opinion provides:

> The Sixth Amendment right, however, is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, " 'at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *United States* v. *Gouveia*, 467 U.S. 180, 188 (1984) (quoting *Kirby* v. *Illinois*, 406 U.S. 682, 689 (1972) (plurality opinion)). And just as the right is offense specific, so also its *Michigan v. Jackson* effect of invalidating subsequent waivers in police-initiated interviews is offense specific.
>
> > "The police have an interest ... in investigating new or additional crimes [after an individual is formally charged with one crime.] ... [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that

time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. . . ." *Maine* v. *Moulton*, 474 U.S. 159, 179-180 (1985).

> "Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Id*. at 180, n. 16.

*Id*. at 175-76.

The Court in *McNeil* explained that under *Edwards* v. *Arizona*, 451 U.S. 477 (1981), "Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present." 501 U.S. at 177 (emphasis in the original). The Court then stated that the defendant in *McNeil* sought to prevail by combining his right to counsel under the Fifth Amendment and under the Sixth Amendment. The defendant contended that even though he expressly waived his *Miranda* right to counsel every time he was interrogated, the waivers were invalid "because his prior invocation of the offense-specific Sixth Amendment right with regard to the [unrelated crime] was also an invocation of the nonoffense-specific *Miranda-Edwards* right." *Id*. The Supreme Court stated, "We think that it is false as a matter of fact and inadvisable (if even permissible) as a contrary-to-fact presumption of policy." *Id*. The Court rejected the possibility that it should adopt the policy that the assertion of the Sixth Amendment right to counsel implies an assertion of the *Miranda* Fifth Amendment right, stating:

> If a suspect does not wish to communicate with the police except through an attorney, he can simply tell them that when they give him the *Miranda* warnings. There is not the remotest chance that he will feel "badgered" by their asking to talk to him without counsel present, since the subject will not be the charge on which he has already requested counsel's assistance (for in that event *Jackson* would preclude initiation of the interview) and he will not have rejected uncounseled interrogation on *any* subject before (for in that event *Edwards* would preclude initiation of the interview). The proposed rule would, however, seriously impede effective law enforcement. The Sixth Amendment right to counsel attaches at the first formal proceeding against an accused, and

> in most States, at least with respect to serious offenses, free counsel is made available at that time and ordinarily requested. Thus, if we were to adopt petitioner's rule, most persons in pretrial custody for serious offenses would be *unapproachable* by police officers suspecting them of involvement in other crimes, *even though they have never expressed any unwillingness to be questioned.* Since the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good, society would be the loser. Admissions of guilt resulting from valid *Miranda* waivers "are more than merely 'desirable'; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Moran,* 475 U.S., at 426 (citation omitted).

501 U.S. at 180-81 (emphasis in the original).

■ Applying *McNeil* to the present case, even if Landrum had been arraigned on the Anderson charges on the morning of December 14, 1994, as scheduled, and an attorney had been appointed for that case, he still could have been questioned regarding the murder of Ms. Hassler. Landrum was repeatedly given his *Miranda* warnings and repeatedly gave valid waivers. There was simply no police misconduct and no connection between appellant's missing his scheduled arraignment in the Anderson matter and giving the confession in the present case. Therefore, the trial court properly refused to suppress the confession.

In accordance with Rule 4-3(h) of the Rules of the Supreme Court, the record has been reviewed for rulings adverse to appellant, but not argued on appeal, and no reversible errors were found.

Affirmed.