Larry LANDRUM *v.* STATE of Arkansas

CR 96-1195                                    944 S.W.2d 101

Supreme Court of Arkansas
Opinion delivered May 5, 1997

*Booth & Honeycutt, PLC*, by: *J. Marvin Honeycutt*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Larry Landrum appeals the judgment of the Crawford County Circuit Court, which was entered pursuant to a jury verdict, convicting him of attempted rape and kidnapping and sentencing him as a habitual offender to consecutive terms of imprisonment for fifty years and

life, respectively. Jurisdiction is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (as amended by *per curiam* July 15, 1996). Appellant's sole point for reversal is that the trial court erred in admitting an inculpatory statement he gave because his first appearance before a judicial officer was delayed unnecessarily. We find no merit to his argument and affirm the judgment of conviction.

Appellant was arrested on December 12, 1994, and an information was filed on December 13, 1994, charging him with first-degree false imprisonment, aggravated assault, attempted rape, and theft of property. The victim of these crimes was Kristy Anderson. His arraignment on these charges was set for 8:30 a.m. Wednesday, December 14, 1994. An amended information was filed on December 14, 1994, charging Appellant with kidnapping, aggravated assault, attempted rape, and theft of property. At the time his arraignment was scheduled on December 14, 1994, Appellant was giving a confession to another unrelated crime, the murder of Lucy Hassler. This court affirmed his murder conviction in *Landrum v. State*, 326 Ark. 994, 936 S.W.2d 505 (1996). In addition to the December 14, 1994 confession to the Hassler murder, on December 16, 1994, Appellant gave a statement concerning the crimes against Anderson in which he admitted asking Anderson to have sex and to wrestling with her.

Appellant moved to suppress the statement he gave on December 16, 1994, concerning the crimes against Anderson. He argued that there was an unnecessary delay regarding his initial appearance and arraignment under A.R.Cr.P. Rule 8.1. The trial court ruled there was no delay and denied the motion to suppress.

On appeal, Appellant contends that he should have been arraigned as scheduled on December 14, 1994, and that if he had been, he would have had counsel appointed and would not have given the statement on December 16, 1994. While we may use the terms "first appearance" and "arraignment" interchangeably once criminal charges have been filed, in the present case, we are concerned only with Appellant's first appearance as provided in Rule 8.1.

Rule 8.1 provides that an arrested person who is not released by citation or other lawful manner shall be taken before a judicial officer without unnecessary delay. This court has not adopted a specific time limit for measuring Rule 8.1 violations. *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987). However, when Rule 8.1 has been violated, this court applies a three-part test to determine if evidence obtained during the delay should be suppressed. Evidence must be suppressed if (1) the delay was unnecessary, (2) the evidence is prejudicial, and (3) the evidence is reasonably related to the delay. *Id.*; *Ryan v. State*, 303 Ark. 595, 798 S.W.2d 679 (1990). In short, if an unnecessary delay occurs, statements given by the accused are not automatically excluded; rather, the court considers whether the statement is prejudicial and whether it is reasonably related to the delay. *Landrum*, 326 Ark. at 999, 936 S.W.2d at 506.

There is no doubt the statement was prejudicial, given that Appellant admitted to asking Anderson to have sex and to wrestling with her. The question before us then is whether the delay from the time Appellant was charged on December 13, 1994, and again on December 14, 1994, to the time he gave the statement on December 16, 1994, was unnecessary.

Appellant relies heavily on *Clay v. State*, 318 Ark. 122, 883 S.W.2d 822 (1994), where this court reversed a judgment of conviction because of an unnecessary delay in Clay's first-appearance hearing. The State responds that *Clay* is distinguishable from this case on the facts. In *Clay*, this court stated that the reason for the delay was the prosecutor's request for a continuance to obtain additional evidence. Here, the State contends that the reason for the delay was Appellant's desire to give a confession to the Hassler murder. We agree and conclude that this case is more similar to *Ryan*, 303 Ark. 595, 798 S.W.2d 679, where this court held that the confession was not reasonably related to any delay but was prompted by the defendant's desire to negotiate a bargain with authorities to his advantage.

As this court determined in Appellant's appeal of the Hassler murder, the reason for the delay in Appellant's arraignment was solely due to Appellant's specific request to give a statement, albeit

in an unrelated case, during the time he was originally scheduled to be arraigned. *See Landrum*, 326 Ark. at 998, 1001, 936 S.W.2d 506, 507-08. Here, we are concerned with the same delay that concerned us in the Hassler murder, but with a different statement — the statement Appellant gave on December 16, 1994, concerning the attempted rape and kidnapping of Anderson. Regardless of the particular statement, the reason for the delay is the same — Appellant wanted to give a confession to an unsolved murder, but he wanted to discuss his possible punishment with the prosecutor first, and he specifically asked to wait until the morning of December 14, 1994, to do both because he was tired. Thus, Appellant's reliance on *Clay* is misplaced.

Arguably, a delay in the arraignment from December 14, 1994, to December 21, 1994, would be unnecessary. The pertinent inquiry, though, is at what point would an inculpatory statement obtained from the accused during that period of time be considered reasonably related to the delay? We consider the following factors relevant to such a determination: (1) Any proof that the delay was for the purpose of obtaining a confession; (2) the frequency of police interrogation; (3) whether the accused was incommunicado; (4) the passage of time.

We find the following evidence germane to our determination. On December 13, 1994, at approximately 5:00 p.m., while Appellant was incarcerated on the attempted rape and kidnapping charges, Crawford County Sheriff's deputies obtained a waiver of Appellant's *Miranda* rights and questioned him about the Hassler murder. During that interview, Appellant agreed to take a polygraph examination, which he did take at approximately 8:00 p.m. After the polygraph, Appellant requested to speak with then-Lieutenant Dale Best of the Arkansas State Police.

Captain Best spoke with Appellant from 10:25 p.m. to 11:45 p.m. on the evening of December 13, 1994. Appellant told Captain Best that he would tell him "what happened regarding Lucy Hassler, provided that he [knew] up front what he [faced] from the prosecuting attorney's office[.]" Captain Best asked Appellant if he wanted him to contact the prosecutor that night, to

which Appellant replied that he would rather wait until the morning because he was tired.

Captain Best stated that he honored Appellant's request to wait until the morning, and returned to see Appellant at 7:50 a.m. on December 14, 1994. Captain Best told Appellant that the deputy prosecuting attorney would be there shortly. Appellant then admitted to Captain Best that he was responsible for Hassler's disappearance and death. Steve Tabor, the deputy prosecutor, arrived at approximately 8:20 a.m., and, pursuant to Appellant's request, informed Appellant of the ranges of punishment for the charges for which he was incarcerated and for the possible charges for the Hassler murder. Tabor told Appellant that any sentence Appellant received for the charges upon which he was being held and any charges for the Hassler murder could be run concurrently. Tabor also indicated that the State would not seek the death penalty.

Following his conversation with Tabor, Appellant was informed of his *Miranda* rights at 8:35 a.m. and gave a detailed confession of the Hassler murder. That confession concluded at 9:14 a.m. on the fourteenth, after which Appellant accompanied officers to the scene of the Hassler murder. Appellant led officers to within twenty or thirty feet of where they had previously recovered some skeletal remains, clothing, tennis shoes, and eyeglasses in 1991.

Two days later, on December 16, 1994, officers conducted an interview with Appellant concerning the charges in the present case. Before beginning the interview, Appellant was again advised of his *Miranda* rights from a statement of rights form, which was signed by Appellant. The record reflects that the interview began at 2:31 p.m. and concluded at 2:56 p.m., twenty-five minutes later.

Based on the foregoing evidence, we cannot say the delay in Appellant's arraignment was unnecessary or that the December 16, 1994 statement was reasonably related to the delay. Appellant and the deputy prosecutor discussed the possibilities of Appellant avoiding the death penalty and receiving concurrent sentences on the Hassler murder and the Anderson attempted rape and kidnap-

ping. Thus, the delay was not for the purpose of obtaining a confession from Appellant for the crimes against Anderson. Rather, the delay was due to Appellant's expressed desire to negotiate a favorable bargain with the State and to confess to an unrelated murder that had remained unsolved since sometime prior to 1991.

Moreover, had the statement been taken from Appellant at some later point, such as December 19 or 20, the passage of time might well weigh in favor of our finding that the statement was reasonably related to the delay. Such was clearly not the case. Furthermore, there is no indication of police misconduct in this case, or that Appellant was not well-apprised of his *Miranda* rights. In fact, the record in this case reflects that Appellant was informed of his right to remain silent, as well as his right to counsel, no less than six separate times. In light of all the facts and circumstances surrounding the statement, particularly the fact that no police misconduct occurred or is even alleged, we see no reason to apply the rather harsh effects of the exclusionary rule to Appellant's statement. *See Landrum*, 326 Ark. 994, 936 S.W.2d 505.

In accordance with Ark. Sup. Ct. R. 4-3(h), the record of the trial has been examined for rulings adverse to Appellant on objections, motions, and requests by either party, and we find no reversible error.

Affirmed.

NEWBERN and THORNTON, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. On December 16, 1994, the fifth day following his arrest, Larry Landrum confessed to assaulting Kristie Anderson. The question is whether the delay between the arrest on December 12 and the giving of the confession was an "unnecessary delay" and whether the statement he gave to the police was the result of that delay.

The majority reasons that Mr. Landrum was not being delayed from his first appearance in violation of Ark. R. Crim. P. 8.1 when he made the incriminating statement and that the statement was thus properly admitted into evidence against him. In order to discern the flaws in the majority's reasoning, it is neces-

sary to understand the purpose and history of Rule 8.1 and the role that the first appearance plays in our criminal justice system.

### 1. Rule 8.1 and the "prompt-appearance requirement"

The requirement that an arrested person be taken before a judicial officer for a prompt first appearance is well established in the jurisprudence of the federal courts and the courts of Arkansas and most, if not all, states through statutes and court rules. *See generally* Annotation, 28 A.L.R. 4th 1121 (1984); 1 WAYNE R. LEFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 6.3, pp. 451-457 (1984); 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2D §§ 71-75, pp. 74-123 (1982).

Since January 1, 1976, the Arkansas prompt-appearance requirement has appeared at Ark. R. Crim. P. 8.1 as follows:

> [a]n arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay.

Federal R. Crim. P. 5(a) (West 1997) imposes the same "without unnecessary delay" requirement.

By their terms, federal and state provisions imposing a prompt-appearance rule generally have failed to specify sanctions against violations of the rule. *See Developments in the Law—Confessions*, 79 HARV. L. REV. 938, 984 (1966); Note, *The* McNabb *Rule Transformed,* 47 COLUM. L. REV. 1214, 1215 (1947); WRIGHT, *supra,* § 72, at p. 78 (describing state prompt-appearance statutes as unenforceable and "largely ignored"). In 1943, however, the United States Supreme Court began to fashion a remedy to redress violations of federal prompt-appearance provisions, including Fed. R. Crim. P. 5(a). In *McNabb v. United States,* 318 U.S. 332 (1943), the Court construed a federal statute as requiring federal officers to present arrested persons promptly before a committing authority and held that confessions obtained in violation of the statute's prompt-appearance requirement must be suppressed.

In *Mallory v. United States,* 354 U.S. 449 (1957), the petitioner's rape conviction was unanimously reversed because of

admission in evidence of a statement obtained by the police during an "unnecessary delay" in violation of the federal rule. The *McNabb-Mallory* rule, as it became known, thus became a fixture of the Supreme Court's power to supervise the federal courts, *Gallegos v. Nebraska,* 342 U.S. 55 (1951), but not a rule constitutionally required to be implemented in the states. Some states adopted the rule, and they apply it just as the Supreme Court has done. Others have ignored it. *See* LeFave & Israel, *supra,* § 6.3(c), at p. 457.

In Arkansas we sanction against violations of Rule 8.1 by suppressing prejudicial statements that the arrested person makes as a result of being unnecessarily delayed from a first appearance. *Duncan v. State,* 291 Ark. 521, 726 S.W.2d 653 (1987); *Cook v. State,* 274 Ark. 244, 623 S.W.2d 820 (1981). It is true that this Court, in past decisions, has held that the prompt-appearance requirement contained in Ark. Code Ann. § 16-85-201 (1987) is directory rather than mandatory and that the statute therefore does not require suppression of a statement made by a defendant while being delayed from a first appearance. *See, e.g., Wilson v. State,* 258 Ark. 110, 522 S.W.2d 413 (1975); *Paschal v. State,* 243 Ark. 329, 420 S.W.2d 73 (1967). *See generally* Annotation, *supra,* § 3, at p. 1133 n.19, and § 6, at pp. 1152-53, 1157; F. Lewis Steenken, Richardson v. State: *Ark. R. Crim. P. 8.1—A Rule in Need of a Standard,* 38 Ark. L. Rev. 842, 846-47 (1985); Linda A. Malone, *The Availability of a First Appearance and Preliminary Hearing—Now You See Them, Now You Don't,* 1983 Ark. L. Notes 41. Our recent cases, however, firmly establish that the prompt-appearance requirement contained in Rule 8.1 is mandatory, *see Bolden v. State,* 262 Ark. 718, 561 S.W.2d 281 (1978), and that violations of the rule will result in suppression of incriminating statements. *Cook v. State, supra.*

A statement given by an arrested person during a delay prior to his first appearance must be suppressed if (1) the statement is prejudicial; (2) the delay is unnecessary; and (3) the statement is reasonably related to the delay. *Duncan v. State,* 291 Ark. at 528-29, 726 S.W.2d at 657. *See also Allen v. State,* 297 Ark. 155, 158, 760 S.W.2d 69, 70 (1988).

We have recognized that the purpose of Rule 8.1 is

> to afford an arrestee protection against unfounded invasion of liberty and privacy. Moreover, the person under arrest taken before a judicial officer without unnecessary delay will have the charges explained, will be advised of his constitutional rights, and will have counsel appointed for him if an indigent, and arrangements for bail can be made expeditiously. Such action may avoid the loss of income and the disruption and impairment of his family relationship. Indeed, these are basic and fundamental rights which our state and federal constitutions secure to every arrestee.

*Bolden v. State,* 262 Ark. at 724, 561 S.W.2d at 284. In the *Duncan* case, we recognized that, "in addition to the purpose of guarding against coercive influence of custodial interrogation, the rule insures that the accused is placed in early contact with a judicial officer so that protections covered by preliminary arraignment are afforded without delay, that the right to counsel may be clearly explained and implemented upon the accused's request and that the accused is protected from being held incommunicado for protracted periods of time." *Duncan v. State,* 291 Ark. at 528, 726 S.W.2d at 656.

An incriminating statement given during a delay from a first appearance in violation of Rule 8.1 may be suppressed even if the statement is voluntary. As we observed in the *Duncan* case, a voluntariness standard is not the appropriate approach "in seeking a reasonable and fair resolution of the application" of Rule 8.1. *Duncan v. State,* 291 Ark. at 529, 726 S.W.2d at 657. "As we have said, assurance of voluntariness is not the only concern. . . . [I]f exclusion under [Rule 8.1] rests on a voluntariness standard, we are again faced with a swearing-match the rule was designed to avoid." *Id.*

While the Constitution may require suppression of an incriminating statement only if it is involuntary or obtained in violation of due process, there is no doubt that Rule 8.1 and the *Duncan* rule provide additional safeguards insofar as they may require in some instances the suppression of even a voluntary statement.

## 2. The role of the first appearance

It must be acknowledged that our opinions have been imprecise in the terminology used to describe three separate post-arrest procedures. The majority opinion in this case perpetuates the confusion among (1) the probable-cause hearing, (2) the first appearance, and (3) the arraignment. With our decision in this case, we should, once and for all, assure the bench and bar that we understand the differences among those procedures and resolve not to confuse them henceforth.

### a. Probable-cause hearing

A person arrested without a warrant is entitled to a probable-cause determination pursuant to Ark. R. Crim. P. 4.1(e), which provides that a person arrested without a warrant shall not be held in custody unless a judicial officer determines there is reasonable cause to believe the person has committed an offense. The rule requires the determination to be made "promptly, but in no event longer than forty-eight (48) hours from the time of arrest" absent a demonstration of emergency or extraordinary circumstances. The rule provides that the probable-cause determination and the first appearance may conincide.

Rule 4.1(e) is consistent with the Fourth Amendment's requirement that a person arrested without a warrant receive a determination of probable cause by a judge within forty-eight hours of arrest. *See County of Riverside v. McLaughlin,* 500 U.S. 44 (1991); *Gerstein v. Pugh,* 420 U.S. 103 (1974).

In the case at bar, Mr. Landrum was arrested on Monday, December 12, 1994, and Officer Pittman of the Crawford County Sheriff's Department executed an affidavit for a probable-cause determination the same day. A judge signed the affidavit on Wednesday, December 14, and determined that probable cause existed for Mr. Landrum's arrest. As Rule 4.1(e) did not require the judge to receive Mr. Landrum for an appearance in order to determine whether probable cause existed for his arrest, it was appropriate for the probable-cause determination to occur strictly "on paper." Although it is not a matter at issue, I note that the

probable-cause hearing in this case occurred slightly more than forty-eight hours after the arrest, and there was no demonstration of emergency or extraordinary circumstance.

Although a judge may rule on the probable-cause issue during the first appearance that occurs pursuant to Rule 8.1, presumably if it occurs within forty-eight hours of arrest, nothing in Rule 4.1(e) or Rule 8.1 requires the first appearance to occur within any specific amount of time in relation to the arrest. Rule 4.1(e) simply provides an option to the trial court to make the probable-cause determination during the first appearance. These two procedures may, however, occur apart from each other. Only the probable-cause determination must occur within forty-eight hours of the arrest. The first appearance simply must occur "without unnecessary delay."

Rules 4.1 and 8.1 obviously serve different purposes. The fact that a probable-cause determination is made in compliance with Rule 4.1(e), often without the presence of the accused before a magistrate, does not excuse the State from its obligation under Rule 8.1 to present an arrested person, no matter how the arrest occurred, to a judicial officer without unnecessary delay. While the point of Rule 4.1(e) is to ensure that an arrest without a warrant is based upon reasonable cause, the point of Rule 8.1 is to ensure that an arrested person hears directly from the judicial officer an explanation of the charges and his constitutional rights, particularly his right to counsel and his right to remain silent.

### b.   First appearance

Rule 8.1 requires the first appearance to occur without unnecessary delay after the arrest, whether the arrest is warrantless or based upon a warrant. The judicial officer must conduct the first appearance in accordance with Ark. R. Crim. P. 8.3, which provides as follows:

> (a) Upon the first appearance of the defendant the judicial officer shall inform him of the charge. The judicial officer shall also inform the defendant that:
>
> (i) he is not required to say anything, and that anything he says can be used against him;

(ii) he has a right to counsel; and

(iii) he has a right to communicate with his counsel, his family, or his friends, and that reasonable means will be provided for him to do so.

(b) No further steps in the proceedings other than pretrial release inquiry may be taken until the defendant and his counsel have had an adequate opportunity to confer, unless the defendant has intelligently waived his right to counsel or has refused the assistance of counsel.

(c) The judicial officer, if unable to dispose of the case at the first appearance, shall proceed to decide the question of the pretrial release of the defendant. In so doing, the judicial officer shall first determine by an informal, non-adversary hearing whether there is probable cause for detaining the arrested person pending further proceedings. The standard for determining probable cause at such hearing shall be the same as that which governs arrests with or without a warrant.

Although Rule 8.3 requires the judicial officer to apprise the arrested person of his right to counsel during the first appearance, Ark. R. Crim. P. 8.2(a) provides that "[a]n accused's desire for, and ability to retain, counsel should be determined by a judicial officer before the first appearance, whenever practicable." Moreover, Ark. R. Crim. P. 8.5(a) provides that "[a] pretrial release inquiry shall be conducted by the judicial officer prior to or at the first appearance of the defendant." According to Ark. R. Crim. P. 9.1, the judicial officer may, during the first appearance, "release the defendant on his personal recognizance or upon an order to appear."

Given the critical impact that the communications, required by Rule 8.3, between the judge and the accused may have on the latter's defense, it is essential that the first appearance be conducted after the arrest without unnecessary delay.

### c. Arraignment

As this Court has done on previous occasions, the majority opinion refers to the procedure established by Rule 8.1 as an "arraignment" rather than a "first appearance." Rule 8.1 provides

for a first appearance, not an arraignment. The majority appears to recognize that the two proceedings are distinct, but it insists on referring to the procedure established by Rule 8.1 as an "arraignment." The majority opinion concludes that it is appropriate to use the terms "first appearance" and "arraignment" interchangeably "once criminal charges have been filed." That is erroneous, illogical, and not supported by authority. It is *never* appropriate to use these terms synonymously, whether before or after the filing of the information.

It is not altogether clear why we have continued to use the terms "first appearance" and "arraignment" interchangeably. Perhaps one reason is that trial courts may conduct arraignments during first appearances, and the two proceedings, in the minds of appellate judges, have been collapsed into one.

The first appearance is simply "the first proceeding at which a defendant appears before a judicial officer." Ark. R. Crim. P. 5.1(f). The judicial officer merely informs the defendant of the charges, advises him of his constitutional rights (and possibly arranges for the appointment of counsel), and addresses the matter of pre-trial release. Ark. R. Crim. P. 8.3. *See* LeFave & Israel, *supra*, § 1.4, at pp. 21-23.

By contrast, an arraignment is the proceeding in which the information or indictment is read to the defendant after which the defendant is asked to enter a plea. *See* Ark. Code Ann. § 16-85-701 (1987). *See also* Black's Law Dictionary 109 (6th ed. 1990)(defining arraignment as the procedure "whereby the accused is brought before the court to plead to the criminal charge against him in the indictment or information"); LeFave & Israel, *supra*, § 1.4, at p. 26.

There is no provision in our rules of criminal procedure that defines an arraignment or establishes when an arraignment should occur in relationship to the arrest, probable-cause determination, or first appearance. Conceivably, it may well be appropriate in some instances for the arraignment to occur during the first appearance, but Rule 8.3 does not require the defendant to enter a plea or to be arraigned during the first appearance.

### 3. The Duncan test

The rule announced in *Duncan v. State, supra,* controls the outcome of the case at bar. The statement made by Mr. Landrum on Friday, December 16, 1994, must be suppressed if (1) the statement was prejudicial; (2) the delay was unnecessary; and (3) the statement was reasonably related to the delay.

The majority must concede that Mr. Landrum's statement was inculpatory and thus prejudicial. It concludes, however, that the second and third elements of the *Duncan* test are not satisfied and that Mr. Landrum therefore was not delayed from his first appearance in violation of Rule 8.1. According to the majority opinion, the delay in presenting Mr. Landrum before a judicial officer for a first appearance was neither unnecessary nor reasonably related to the December 16 statement because the delay was occasioned by Mr. Landrum's request to talk to the police on the morning of Wednesday, December 14, and confess to the murder of Lucille Hassler. The majority further contends that the delay was not reasonably related to Mr. Landrum's December 16 statement because there was no allegation or evidence of police misconduct and because Mr. Landrum was given *Miranda* warnings prior to making the statement.

#### a. The "unnecessary" element

The question is whether the delay from the time Mr. Landrum was *arrested and detained* on the morning of Monday, December 12, 1994, to the time he gave the inculpatory statement on the afternoon of Friday, December 16, was unnecessary. In other words, was it unnecessary for Mr. Landrum to be detained for approximately five days without a first appearance?

The majority frames the issue differently. It suggests that the period of delay to be evaluated under the *Duncan* test is the period commencing on Tuesday, December 13, *when the information was filed,* or Wednesday, December 14, when the first amended information was filed, and ending on Friday, December 16. Thus, according to the majority opinion, the relevant period of delay under Rule 8.1 does not include the time between the arrest and

detention and the filing of an information. In the majority's view, the relevant period of delay in the case at bar is only three or four days. That is a remarkable observation and not an accurate statement of the law.

Rule 8.1 confers a right to a prompt first appearance on an "arrested person." When a person is arrested and detained, he is entitled to be taken before a judicial officer without unnecessary delay, and this right is not contingent, as the majority suggests it is, upon whether an information has been filed. Our cases also are clear that the period of delay to be evaluated under Rule 8.1 and the *Duncan* test commences with the arrest, not the filing of the information. *See, e.g., Ryan v. State,* 303 Ark. 595, 798 S.W.2d 679 (1990); *Owens v. State,* 300 Ark. 73, 777 S.W.2d 205 (1989); *Richardson v. State,* 283 Ark. 91, 678 S.W.2d 772 (1984).

The implications of a contrary rule are clear. The period of time between an arrest and the filing of the information may be substantial. Clearly, if the time between an arrest and the filing of the information is not counted, the police will be allowed to detain an arrested person without regard to his right to make a prompt first appearance under Rule 8.1. This will assuredly frustrate the rule's very purpose.

Here, the majority equivocates on the question of when the delay that is to be evaluated under the *Duncan* test commenced. It first suggests Tuesday, December 13, the date on which the information was filed, and it then suggests Wednesday, December 14, the date on which the first amended information was filed. The majority then sets out to explain why it believes the ensuing delay from December 13 (*or* December 14) to Friday, December 16 was not unnecessary. Even assuming that the majority is correct to analyze only the period from December 13 or December 14 to December 16, its attempt to justify even this period of delay is incomplete and unpersuasive.

In asserting that the delay in Mr. Landrum's first appearance was not unnecessary, the majority first states that Mr. Landrum's arraignment—and presumably his first appearance as well—were initially scheduled for 8:30 a.m. on Wednesday, December 14, 1994, before the Crawford County Circuit Court. The majority

suggests that Mr. Landrum missed the opportunity to make a first appearance on the morning of December 14 because, during that time, Mr. Landrum, as he had requested or agreed to do, was either talking with the authorities about his role in the Hassler murder or showing the authorities the wooded area in Crawford County where he apparently had committed the murder. That does not, however, explain the postponment of the first appearance until December 21. The explanation given for that in the State's brief is that the Circuit Court held "arraignments" only on Wednesdays at 8:30 a.m.

This explanation may justify the decision not to present Mr. Landrum to a judicial officer on the morning of Wednesday, December 14, and perhaps the early afternoon of that day. Consequently, the portion of the delay that was actually occasioned by Mr. Landrum's participation in the Hassler investigation may not be viewed as "unnecessary." Although the record is somewhat vague on the question of when the trip to the murder scene occurred and how much time was spent traveling to and from the scene, the testimony given by Officer Pittman and (now) Captain Best suggests that the trip occurred promptly after the officers concluded their interrogation at 9:14 a.m. and that Mr. Landrum was back in jail by the late morning or early afternoon of December 14.

The majority's proffered explanation—while justifying the delay that occurred during the morning and early afternoon hours of December 14—does not answer the question of why Mr. Landrum was not taken before a judicial officer on the afternoon of December 14, or at any time on Thursday, December 15, or on the morning or early afternoon Friday, December 16. Neither Mr. Landrum's participation in the Hassler investigation, nor any other reason or explanation mentioned in the majority opinion, demonstrates that it was "necessary" to delay Mr. Landrum's first appearance beyond the morning or early afternoon of December 14.

Thus, in considering whether the delay in Mr. Landrum's was "unnecessary" under the *Duncan* test, the majority goes only so far as to explain why Mr. Landrum was not taken before a

judicial officer during the morning and early afternoon hours of December 14. It does not account for the additional delay from December 14 to December 16. Moreover, as mentioned above, the proper period of delay to evaluate with reference to the *Duncan* test is the period commencing from Monday, December 12, the date of Mr. Landrum's arrest, to Friday, December 16. The majority simply fails to explain why Mr. Landrum could not have been taken before a judicial officer on Monday, December 12, or Tuesday, December 13.

The State, both in the hearings below and in its brief, suggested that the delay from December 14 to December 21 was necessary on account of the Circuit Court's "once-a-week" policy on holding arraignments. Surely the rights of arrested persons cannot be subject to that sort of scheduling on the part of the courts. What if it had been every two weeks, or every month? In addition, nothing is presented to suggest that the Circuit Court judge was the only judicial officer available. Although we have held that Rule 8.1 is not violated when a person is arrested and held over a weekend and delayed from his first appearance until the following Monday, *see Bryant v. State,* 314 Ark. 130, 862 S.W.2d 215 (1993); *Johnson v. State,* 307 Ark. 525, 533, 823 S.W.2d 440 (1992), we have never sanctioned a delay in a first appearance on the basis of a trial court's preference to hear arraignments only on one day of the week.

Even if the Trial Court's usual practice was to hear *arraignments* on Wednesdays at 8:30 a.m., nothing in the record demonstrates that the Trial Court could not have received Mr. Landrum for a *first appearance* after he was returned to jail following the trip to the Hassler murder scene on December 14. There simply is no evidence that a judge was unavailable from Wednesday, December 14 to Friday, December 16 to receive Mr. Landrum for a first appearance. As was the case in *Clay v. State,* 318 Ark. 122, 132, 883 S.W.2d 822, 827 (1994), the State in this case has "presented nothing to show that [Mr. Landrum] could not have been taken before a judge" on December 14, December 15, or December 16.

### b. The "reasonable relationship" element

We have said the "reasonable relationship" element of the *Duncan* test does "not require that the delay be the sole cause of the confession. . . . It is sufficient if it reasonably appears the delay contributed to obtaining the confession." *Duncan v. State*, 291 Ark. at 530, 726 S.W.2d at 657. We have recognized "the subjective nature of the 'reasonably related' test," and we have indicated that, in evaluating the relationship between the delay and the prejudicial statement, we will review "[e]ach case . . . taking into account the totality of the circumstances." *Ryan v. State*, 303 Ark. 595, 599, 798 Ark. 679, 682 (1990). We also have suggested that a prejudicial statement will lack the necessary causal relationship to the delay where the statement is given prior to the delay, *Lemons v. State*, 307 Ark. 12, 817 S.W.2d 411 (1991); *Branscomb v. State*, 299 Ark. 482, 774 S.W.2d 426 (1989); *Duncan v. State*, 291 Ark. at 529, 726 S.W.2d at 657; *Richardson v. State*, 283 Ark. at 91-C, 678 S.W.2d at 774, or where the statement is prompted by an arrested person's desire to negotiate a plea bargain. *Johnson v. State, supra*; *Ryan v. State, supra*.

In the *Ryan* case, upon which the majority heavily relies, we noted that the cause of delay was Mr. Ryan's attempt to "negotiate a [plea] bargain with the authorities to his advantage." *Ryan v. State*, 303 Ark. at 599, 798 S.W.2d at 682. Unlike the *Ryan* case situation, Mr. Landrum told Lt. Best that he wanted to know from the prosecutor the punishment he would face if convicted of the offenses against Ms. Hassler and Ms. Anderson. There was no evidence of "negotiation." Lt. Best testified specifically that the question of a plea bargain did not arise in the course of the December 14 interrogation.

The majority asserts that, in determining whether the necessary relationship exists, we consider the passage of time and the frequency of police interrogation as well as whether the delay was for the purpose of obtaining a confession and whether the arrested person has been held *incommunicado*. The majority further suggests that our "reasonable relationship" analysis under the *Duncan* rule may be affected by whether or not the appellant received *Miranda* warnings and by the presence or absence of "police mis-

conduct." The majority appears to rely on these factors, in addition to the holding in *Ryan v. State, supra,* in concluding that there is no reasonable relationship between Mr. Landrum's December 16 statement and the delay in his first appearance. The majority's reasoning here is again unpersuasive.

We have mentioned those factors in discussing the "reasonable relationship" requirement in past decisions, but we have not established them as rigid criteria. *See Ryan v. State,* 303 Ark. at 599, 798 S.W.2d at 682 (". . . we are not here saying that the holding of an accused incommunicado or the subjecting of the accused to verbal abuse or threats or the denying of access to family or friends are the requirements for satisfying the third prong of the *Duncan* test.") The overarching question remains whether "it reasonably appears [that] the delay contributed to obtaining the confession." *Duncan v. State,* 291 Ark. at 530, 726 S.W.2d at 657.

The statement in question was given in response to the eighth interrogation at the conclusion of five days of delay. To say the delay made no contribution to obtaining the confession is ludicrous. In our opinion affirming Mr. Landrum's conviction for the murder of Ms. Hassler, we repeatedly stated that there had been no "police misconduct," apparently referring to "third-degree" tactics or physical or mental abuse. The point of the opinion was, however, that there was not much delay between the time of arrest and the statement concerning Ms. Hassler. Indeed, the delay with respect to that statement was due in significant measure to Mr. Landrum's desire, expressed on December 13, to meet privately with Lt. Best and to wait until the following morning to hear from the prosecutor what his penalty might be. Our opinion did not say that there must be a finding of "police misconduct" to show a violation of Rule 8.1. Obviously there is no such requirement in the rule.

If we do not wish to follow Rule 8.1, we should withdraw it.

I respectfully dissent.