Josephine Linker Hart, Justice, concurring. I agree that the circuit court did not err in refusing to suppress the voice recording on Lewis’s cell phone. However, I believe that the majority’s reliance, on United States v. Patane, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004), is misplaced. Furthermore, adopting as Arkansas law the Patane rationale given the facts in this case is at least precipitous, if not unwise. The majority’s reasoning, i.e., the United States Constitution and the Arkansas Constitution does not persuade. It is the job of the Arkansas Supreme Court, and not the Supreme Court of the United States to interpret the Arkansas Constitution. The factual predicate for Patane is not present here. The Patane court framed the issue as, “In this case we must decide whether a failure to give a suspect the warnings prescribed by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires suppression of the physical fruits of the suspect’s unwarned but voluntary statements.” Following Patane’s arrest for harassing his ex-girlfriend, but after his release on bond, he violated a restraining order prohibiting him from contacting her. Id. at 633-34, 124 S.Ct. 2620. Before the police went to Pa-tane’s residence to arrest him, they learned that Patane possessed a handgun. Id. One of the officers began to advise Patane of his Miranda rights but got no further than the right to | ¡^remain silent, when Patane interrupted, asserting that he knew his rights. Id. Subsequently, in response to repeated direct questions about the location of the handgun, which overcame his stated reluctance to reveal its location, Patane told the police it was located in his bedroom and gave them permission to retrieve it. Id. Conversely, in the case before us, Lewis had twice been given his Miranda warnings. In fact, Lewis had invoked his rights under Miranda to North Little Rock police officers, though not to the Pulaski County deputies who also Mirandized him and were unaware that Lewis had asserted his rights to the North Little Rock officers. While it is true that the Pulaski County' deputies questioned him, Lewis’s revelation about the voice recording was not in response to a direct question. Lewis spontaneously told the deputies, “You want me to show you what I’m talking about? Where’s my phone?” He then stated, “I’m gonna show you something. Show you something while you’re sitting right there and' while he’s on the other side. Well, actually, I’ll let you listen to something. Then, as soon as I let you listen to it, then you’ll know that I’m serious, and I said that you’re running out of time.” The deputies complied with Lewis’s request and handed him his phone. Lewis then played the voice recording, Carl, it’s Beverly. I"just want to let you know I’m okay. I haven’t been hurt. Just do what he says, and please don’t call the police. If you call the police, it could be bad. Just want you to know I love you very much. The deputies requested Lewis to play the recording a second-time, but he refused. The factual disparity between Patane and the case before us is significant. Pa-tane was considered “unwarned,” while Lewis was warned hoice, While both cases involved,the police ignoring the accused person’s stated intent not to respond to questions, Patane, under |⅞1 pressure, revealed the presence1 of the handgun in response to direct .questioning, while Lewis revealed the presence of the voice recording spontaneously. Accordingly, there is no reason to try to fit the case before us into the Patane pigeon hole. When we review the denial of a motion to suppress evidence from a custodial interrogation, we make an independent determination based on the totality of the circumstances. Grillot v. State, 353 Ark. 294, 107 S.W.3d 136 (2003). In Landrum v. State, 326 Ark. 994, 936 S.W.2d 505 (1996), this court stated that the purpose of the exclusionary rule is to deter police misconduct, and where there is no police misconduct, there is no need to suppress evidence. As noted previously, Lewis himself directed the deputies to bring him his cell phone, which had been lawfully seized. There is no indication that the deputies pressured Lewis to play the recording, or that the deputies even knew it existed. A spontaneous statement, regardless of the dictates of Miranda is not automatically rendered inadmissible. Stone v. State, 321 Ark. 46, 900 S.W.2d 515 (1995). Spontaneous statements are not compelled or coerced in any way that violates the Fifth Amendment’s privilege against self-incrimination. Id. As this court noted in Stone, “[t]he Miranda Court itself recognized this rule of law when it stated: ’Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.” Id. at 53, 900 S.W.2d at 519 (quoting Miranda, 384 U.S. at 478, 86 S.Ct. 1602). Under our totality-of-the-circumstances review, it is obvious that Lewis controlled the circumstances that resulted in him revealing the voice recording—not the police. Accordingly, there was no police misconduct, and under Landrum, there is no reason to suppress the voice recording. I «The soundness of this reasoning is manifest. If this court were to hold that the circuit court erred in failing to suppress the voice recording, it would grant every accused person the power to prevent the State from using any evidence that had yet to be discovered by simply invoking his or her Miranda rights and directing the police to its location. Because existing Arkansas Supreme Court precedent adequately addresses the situation, it is unnecessary to adopt a new common-law rule affecting our rights under the Arkansas Constitution. The question of whether the Patane rule is sound is not illuminated by the facts and circumstances in the case before us. Accordingly, it is not proper to adopt such a rule; it would be prudent to wait for a case m which the factual predicate more closely mirrors Patane, before we make such a momentous decision. I concur.