Carolyn Lanore ARNETT *v.* STATE of Arkansas

CR 99-1442 27 S.W.3d 721

Supreme Court of Arkansas
Opinion delivered September 21, 2000

*Herbert T. Wright, Jr.,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Jeffrey A. Weber,* Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Carolyn Lanore Arnett was convicted of hindering apprehension or prosecution of Edward Ferguson and capital murder involving the death of Danny Rogers. She was sentenced to sixty months on the hindering-apprehension count and life without the possibility of parole on the capital-murder count, with the sentences to run concurrently. She appeals from those judgments and raises four points on appeal: (1) substantial evidence does not exist to support her conviction for capital murder; (2) her statements should be suppressed due to an illegal arrest; (3) her statements should be suppressed due to an unnecessary delay in taking her before a magistrate; and (4) testimony regarding her presence at the murder of G.I. Higgins violated Ark. R. Evid. 404(b) as a prior bad act. None of the issues raised has merit, and we affirm.

On October 4, 1997, two murders occurred in Greene County. The victims were G.I. Higgins and Danny Rogers. Hig-

gins was murdered that morning at his place of business in Paragould, G.I. Higgins Car Sales. Rogers was murdered in his van on a gravel road in Paragould after dark, and his van and body were then moved to a location about two to three miles outside of Paragould. On December 17, 1977, Edward Ferguson was arrested in Paragould for the theft of musical instruments and placed in the Greene County jail until his escape on February 14, 1998. On February 19, 1998, Ferguson and Arnett were arrested in connection with the escape.

After her arrest, Arnett gave four statements to law enforcement officers in Greene County. The dates and times of each statement follow:

> Friday, February 20 at 5:12 p.m.
>
> Friday, February 20 at 8:30 p.m.
>
> Saturday, February 21 at 12:45 a.m.
>
> Saturday, February 21 at 7:47 p.m.

She also took investigating officers to the crime scenes where evidence relating to the Higgins and Rogers murders had been destroyed. Arnett was taken before a circuit judge for her first appearance on Monday, February 23, 1998, at 1:00 p.m.

On February 23, 1998, Arnett was charged with capital murder, and on February 24, 1998, she was charged with hindering apprehension or prosecution with respect to Edward Ferguson. Prior to trial, she filed a motion to suppress her four statements due to an illegal arrest in Missouri and a second motion to suppress based on unnecessary delay in bringing her before a circuit judge for her first appearance under Ark. R. Crim. P. 8.1. Both motions were denied. She was tried before a jury, found guilty on both counts, and sentenced to life without the possibility of parole and sixty months.

## I. Sufficiency of the Evidence

For her first point on appeal, Arnett contends that the trial court erred in denying her motion for a directed verdict because there was insufficient evidence to convict her of either capital

felony murder (Ark. Code Ann. § 5-10-101(a)(1) (Repl. 1997)), or premeditated capital murder (Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1997)). She argues, rather, that she was merely present at the murder of Danny Rogers but took no part in it, and, accordingly, she claims an affirmative defense under Ark. Code Ann. § 5-10-101(b) (Repl. 1997).

■■■ This court has stated that the test for determining the sufficiency of the evidence is whether there is substantial evidence to support the conviction. *Britt v. State*, 334 Ark 142, 974 S.W.2d 436 (1998). We must affirm a conviction if there is substantial evidence to support it, and in our assessment we view the evidence in the light most favorable to the State. *Sublett v. State*, 337 Ark. 374, 989 S.W.2d 910 (1999). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *McDole v. State*, 339 Ark. 391, 6 S.W.3d 74 (1999). Issues of credibility are for the jury to determine. *Williams v. State*, 338 Ark. 178, 188, 992 S.W.2d 89, 93 (1999).

Arnett contends that there is no proof that she was an accomplice to the murder of Danny Rogers and argues that her mere presence at the crime scene does not equate to accomplice status. She cites this court to *Pilcher v. State*, 303 Ark. 335, 796 S.W.2d 845 (1990), in support of her argument. The Arkansas Criminal Code defines an accomplice in the commission of an offense as one who, with the purpose of promoting or facilitating the offense:

> (1) Solicits, advises, encourages, or coerces the other person to commit it; or

> (2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

> (3) Having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

Ark. Code Ann. § 5-2-403(a) (Repl. 1997); *see also Britt v. State, supra.*

Contrary to Arnett's argument, there was evidence presented at trial of considerably more than her presence at the crime scene. Ferguson testified that it was Arnett who wanted him to rob someone so that they could have money to get on with their lives.

Regarding the Higgins murder, Ferguson stated that he was drunk and killed Higgins because Arnett wanted the money. He shot Higgins six times, took his wallet, and returned to Arnett. There was no money in the wallet, and Arnett berated him for killing Higgins before he got Higgins's ATM number. They destroyed the evidence of the crime together.

Regarding Danny Rogers, Ferguson testified that Arnett told him to rob Rogers and made the statement: "You done killed one person for no money, why stop now?" Arnett lured Rogers to a deserted road on the pretense that she needed Rogers to follow her back across town after she dropped off Ferguson. Ferguson testified that she said specifically: "He's [Rogers] going to follow us out to the country. When he does, I want you to rob him." According to Ferguson, Arnett told him that Rogers asked Arnett if she would have sex with him if he paid her. This infuriated Ferguson. He stated that Arnett then told him, "I'm going to the back of his van, and when I do, you get out and you shoot him and take his money." After the shooting, Ferguson moved the van with the body to a more secluded area outside of Paragould, with Arnett following. They then went back to their apartment and destroyed the evidence. In Arnett's fourth statement to police officers, she admitted that she knew Rogers was going to be robbed because they thought he had money and she saw Ferguson's gun. She also admitted that she lured him to the location where Ferguson shot him and took his wallet. There was no money in it. They later burned the wallet.

■ Arnett submits that even if there was evidence that she lured Rogers to the site to be robbed, there was insufficient evidence that she encouraged the homicidal act. This court, however, has held that to sustain a conviction of capital felony–murder, it is not necessary that the defendant be shown to have taken an active part in the killing as long as she was an accomplice to, and had the requisite intent for, the underlying felony. *Britt v. State, supra,* (citing *O'Neal v. State,* 321 Ark. 626, 907 S.W.2d 116 (1995)). Here, Arnett admitted that she enticed Rogers to the rural area where he was robbed.

Moreover, there is ample evidence to support a conviction of premeditative murder based on the fact that Arnett was Ferguson's accomplice. Ferguson testified extensively at Arnett's trial that she

*advised, encouraged* and *solicited* him to murder Rogers. According to Ferguson, she informed him that Rogers had money because he had just been paid and that Rogers had agreed to follow them to the destination where she told Ferguson to shoot him and take his money. That certainly is evidence of a plan to rob and kill Rogers.

█ █ Finally, Arnett's argument that Ferguson's story is inconsistent and should not be credited is of no merit as it is solely up to the jury to decide the credibility of a witness. *Williams v. State, supra.* From the evidence presented, it is clear that there was substantial evidence to convict Arnett of capital murder under either the premeditation count or the felony-murder count.

## II. Illegal Arrest

Arnett's next point is that she was arrested in the state of Missouri and that this was an illegal arrest. She contends that her four statements must be suppressed as a result. According to law enforcement officers, including Greene County Sheriff Dan Langston, Arnett told them where Ferguson could be found in Kennett, Missouri on February 19, 1998. She was afraid of Ferguson, according to Sheriff Langston, and wanted to see her children in Paragould. For those two reasons, she asked for transportation back to Arkansas. Chief Beasley of the Cardwell, Missouri Police Department obliged, while Sheriff Langston left to find Ferguson. When she arrived in Arkansas, she was arrested by deputy J.T. Harris of the Greene County Sheriff's Department.

█ When a trial court's denial of a motion to suppress is challenged, our court makes an independent examination of the issue based on the totality of the circumstances and views the evidence in the light most favorable to the State. *Muhammad v. State,* 337 Ark. 291, 295, 988 S.W.2d 17, 19 (1999). We reverse only if the decision to deny the motion to suppress was clearly against the preponderance of the evidence. *Id.*

█ Arnett claims that her arrest was illegal because she was arrested in Missouri without a warrant and transported across the state line into Arkansas. It is well-established that an Arkansas law enforcement officer cannot make a warrantless arrest outside of the territorial limits of his jurisdiction without statutory authority. *See Henderson v. State,* 329 Ark. 526, 953 S.W.2d 26 (1997). No

statutory authority applies to this case. Nevertheless, we conclude that Arnett's argument must fail.

■ ■ In support of her contention that she was illegally arrested in Missouri, Arnett relies on the testimony of Sheriff Dan Langston that he would not have allowed her to leave had she tried to do so in Missouri. Arnett's reliance on this statement, however, is misplaced because the subjective beliefs and opinions of other persons, including law enforcement officers, regarding whether a person is free to leave are irrelevant. *See Ohio v. Robinette*, 519 U.S. 33, 38 (1996) ("[s]ubjective intentions play no role in ordinary, probable cause Fourth Amendment analysis"). A person is "seized" under the Fourth Amendment if "a reasonable person would have believed that [s]he was not free to leave." *Perry v. State*, 303 Ark. 100, 102, 794 S.W.2d 141, 142 (1990).

■ We agree with the State that the circumstances do not support a finding that Arnett was arrested in Missouri. There was no evidence presented that Arnett herself had the belief that she was not free to leave while she was in Missouri. To the contrary, the evidence shows that she repeatedly stated that she wanted to go back to Arkansas and accepted an offer from Chief Beasley to drive her back to Arkansas because she was afraid of Ferguson and wanted to see her children. At all times during the encounter in Missouri, she was aware that the men were plain-clothed police officers. However, no signs of arrest such as force or arresting language were manifested to her by the police officers, and she voluntarily went with Chief Beasley back to Arkansas. Once she was in Arkansas, she was legally arrested by a deputy of the Greene County Sheriffs Department. We cannot say that a reasonable person would have believed she was arrested in Missouri under these circumstances. *See Perry v. State, supra.* The trial court was correct in denying Arnett's motion to dismiss the statements based on an underlying illegal arrest.

### III. Unnecessary Delay

Arnett next argues that her four statements to law enforcement officers must be suppressed because of unnecessary delay in taking her before a magistrate. *See* Ark. R. Crim. P. 8.1. Rule 8.1 requires that "[a]n arrested person who is not released by citation or by

other lawful manner shall be taken before a judicial officer without unnecessary delay." In this case, Arnett was arrested on the night of Thursday, February 19, 1998, and was first taken before a circuit judge in Paragould on Monday, February 23, 1998. During this interval of time, she made four recorded and several unrecorded statements to law enforcement officers. The circuit judge denied her motion to suppress these statements based on the delay, and she appeals that decision.

Arnett first claims that this court has adopted a forty-eight hour rule, which means that a delay in excess of forty-eight hours under Rule 8.1 is constitutionally unreasonable. She cites *Johnson v. State*, 307 Ark. 525, 823 S.W.2d 440 (1992), for this proposition and asserts that the remedy afforded to a defendant who has been held in violation of Rule 8.1 is the suppression of statements taken during the delay prior to the first appearance.

Her reliance on the forty-eight-hour rule in *Johnson v. State, supra,* is misplaced. The forty-eight-hour rule and that case dealt specifically with the necessity for a probable cause hearing under Ark. R. Crim. P. 4.1 relating to an arrest. The instant case does not deal with the issue of probable cause for an arrest. It involves an alleged violation of Rule 8.1, which requires an appearance before a circuit judge to be informed of the charges against her, her right to remain silent, and her right to counsel without unnecessary delay.

This court has never adopted a specific time limit for measuring Rule 8.1 violations. *Landrum v. State*, 328 Ark 361, 944 S.W.2d 101 (1997)(citing *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987)). Instead, when Rule 8.1 is violated, the Court in *Duncan* set out a three-part test to determine whether a statement given during a period of delay must be suppressed: (1) whether the delay was unnecessary, (2) whether the resulting evidence was prejudicial, and (3) whether the resulting evidence was reasonably related to the delay. *Id.* *See also Britt v. State, supra.* The defendant has the burden of proving each prong of the *Duncan* test.

Here, there appears to be no doubt that Arnett's four statements were prejudicial. She admitted that she assisted in the disposal and destruction of evidence relating to the deaths of Higgins and Rogers and further admitted to being present at the murder of Rogers. She added that she followed Ferguson in her vehicle when

Ferguson moved Rogers's van and body to a more secluded area. However, Arnett must also prove that the delay was unnecessary and that her statements reasonably resulted from the delay in order for suppression to occur.

We initially conclude that she did not prove that the delay was unnecessary. Arnett implies in her argument that she should have been taken before a judge sooner than February 23, 1998. However, as the State correctly points out, the record is silent on whether any court was in session during the times that her statements were given. Her statements were given Friday evening, early Saturday morning, and Saturday evening, and it stands to reason that no circuit judge was holding court at these times. And Arnett offers no proof to the contrary. The fact that a circuit judge was available to conduct a first-appearance proceeding hearing under Rule 8.1 was a crucial part of the appellant's argument in *Landrum v. State, supra*. That circumstance has not been shown to exist in the instant case.

Arnett has further failed to show that her statements were reasonably related to the delay. This court has said that statements are reasonably related to a delay "if it reasonably appears the delay contributed to obtaining the confession." *Britt*, 334 Ark. at 155, 974 S.W.2d at 442 (quoting *Duncan*, 291 Ark. at 530, 726 S.W.2d at 657). In determining whether a statement obtained from the accused was reasonably related to the delay, this court will consider the following factors: (1) any proof that the delay was for the purpose of obtaining a confession; (2) the frequency of police interrogation; (3) whether the accused was held incommunicado; and (4) the passage of time. *Landrum*, 328 Ark. at 365, 944 S.W.2d at 103.

Arnett argues that she was interrogated by police officers on four separate occasions during the period of the delay, including one interrogation which began at 12:45 a.m. In addition, she points out that she spent considerable time taking police officers to places where she and Ferguson had allegedly disposed of evidence relating to the murders of Higgins and Rogers. She argues in her brief that this is "a highly frequent system of interrogation allowing [her] little time for rest or contemplation between times."

 The evidence shows, however, that Arnett began requesting to talk to Sheriff Langston from the moment she was arrested and repeatedly asked to speak with law enforcement officers during the next three-and-a-half-day period. Her first statement was taken at 5:12 p.m. on Friday, February 20, 1998, and this was at her instigation. Indeed, up to the time of her first statement, law enforcement officers had no indication that she and Ferguson were involved in any murder. Thus, police officers had no reason to use delay to obtain a confession for the Rogers murder. Later, Arnett agreed to make three additional statements after being fully informed of her *Miranda* rights. We are hard pressed to conclude that her confession was reasonably related to a delay when the delay was prompted by her desire to speak with law enforcement officers. *See Ryan v. State*, 303 Ark. 595, 798 S.W.2d 679 (1990).

Arnett additionally argues that if she had been taken before a circuit judge, she would have been provided with the protections offered by Rule 8.1. She contends that she did not understand the charges against her, and a circuit judge was not given the opportunity to determine whether counsel should be appointed for her. In this regard, she relies on *Clay v. State*, 318 Ark. 122, 133, 883 S.W.2d 822, 828 (1994), where we said that had counsel been appointed, it is "most unlikely that the statements made would have been forthcoming."

 We give Arnett's argument little credence in light of the fact that her actions precipitated the statements to the police officers, and she was repeatedly informed of her right to an attorney and her right to remain silent before every statement was taken. Thus, speculation that she might not have been as forthcoming and cooperative had she first appeared before a judicial officer is not persuasive. She was advised of her *Miranda* rights and could have requested an attorney or refused to answer questions at any time during her questioning. Yet, she continued to speak voluntarily with the law enforcement officers and never requested an attorney. Furthermore, the *Clay* decision is distinguishable. In *Clay*, a deputy sheriff had verbally stated that they should "delay in taking Mr. Clay before a judicial officer 'for evidence involving this case.' " *Clay*, 318 Ark. at 133, 883 S.W.2d at 828. There was clear evidence in that case that the delay was ordered by the deputy sheriff with the expectation that Clay would admit to the crime. There is no evidence of a comparable motivation in the case at hand or that the

delay was deliberate, as was the case in *Clay v. State, supra*, or *Duncan v. State, supra.*

We further observe that Arnett's last statement to police occurred Saturday evening, February 21, 1998, which was within two days of her arrest. Unlike the situation in *Britt v. State, supra*, where this court held that an unnecessary delay had transpired, Arnett was taken before a circuit judge the following Monday for her first appearance. In addition, there was no suggestion that the delay was caused so that police officers could conduct "further investigation," which was the situation in *Britt.*

■ Viewing the totality of the facts and circumstances surrounding the four statements, and particularly the fact that no police misconduct occurred or is even alleged, there appears to be no basis for the suppression of Arnett's statements. The trial court's judgment is affirmed.

## IV. Prior Bad Act

■ For her last point, Arnett argues that the circuit court erred in admitting Ferguson's testimony regarding her presence at the murder of G.I. Higgins earlier that same day. This, she contends, was evidence of an inadmissible prior bad act under Ark. R. Evid. 404(b). She underscores the fact that she was not charged with participating in the murder of Higgins, and asserts that Ferguson's testimony was offered merely as proof of her bad character, which is inadmissible under Rule 404(b) as well as being unfairly prejudicial under Ark. R. Evid. 403.

Arkansas Rule of Evidence 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident.

A circuit court has broad discretion in deciding whether to admit evidence pursuant to Rule 404(b). *Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999); *Johnson v. State*, 337 Ark. 477, 989 S.W.2d 525 (1999).

■ We agree with the State that Arnett's argument must fail because the evidence of her involvement in the Higgins robbery/murder on the same date as the Rogers robbery/murder belies her defense that she acted with Ferguson only out of duress. Ferguson testified that Arnett needed money to make car payments and rent and that money was the primary reason for both the Higgins and the Rogers murders. He further testified that she told him Higgins had money and berated him for killing Higgins before he got Higgins's ATM personal identification number. We discern no abuse of discretion in the ruling of the circuit court under Rule 404(b).

■ Arnett further argues that the Higgins evidence should have been excluded under Rule 403 because any probative value of this evidence was substantially outweighed by its prejudicial effect. She claims on this point that the State had other means of proving that she was not acting under duress, and, therefore, the balance under Rule 403 should be tipped in favor of the evidence being excluded because of its prejudicial effect. The State argues correctly, however, that the evidence of her involvement in the Higgins murder is extremely probative of the fact that she was not acting under duress either during the Higgins murder or later in the day when the Rogers murder occurred. Plus, the State had no other evidence which showed such a complete lack of duress. Again, we do not find that the circuit court's ruling allowing evidence of the Higgins robbery/murder constituted an abuse of discretion.

The record in this case has been reviewed for other reversible error pursuant to Rule 4-3(h) of the Supreme Court Rules, and none has been found.

Affirmed.