Raymond A. MARTINEZ *v.* STATE of Arkansas

CR 01-1114                                98 S.W.3d 827

Supreme Court of Arkansas
Opinion delivered February 28, 2003

Patrick J. Benca; and *Hampton & Larkowski*, by: *Mark F. Hampton*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

A NNABELLE CLINTON IMBER, Judge. Appellant Raymond Martinez was convicted of aggravated robbery and sentenced to imprisonment for ten years. On appeal, he challenges the circuit court's order denying his motion to suppress on three separate grounds. Martinez argues that the officer who detained him was outside his territorial jurisdiction and without statutory authority to arrest him. He also contends that neither his arrest nor the subsequent search of his vehicle was supported by probable cause. This appeal was certified to us by the Arkansas Court of Appeals pursuant to Ark. R. Sup. Ct. 1-2(b)(4), (5) (2002). We find no error and affirm.

Shane Williams was shot and killed by Pam Sowell on January 21, 2000, when he attempted to rob Buddy's Place, a conve-

nience store in the City of Ward owned by Pam and her husband, Alan Sowell.[1] Mr. Sowell, who was also on the premises at the time of the attempted robbery, called 911 after the shooting at 8:39 p.m. He told the operator that a suspect had been shot and was in need of an ambulance. Mr. Sowell also stated that someone else was in the parking lot and a kid was outside the store.

Officer Don Sims of the Austin Police Department was on a routine traffic stop when he heard the radio report that somebody had been shot at Buddy's Place. Officer D. Sims immediately responded to the call and asked if the Ward Police Department needed his assistance. His brother, Eric Sims, who was a police officer with the neighboring City of Ward, answered affirmatively. According to the 911 operator's call logs, Officer Eric Sims was the first officer to arrive at Buddy's Place. He checked in from the store at 8:41 p.m. — just two minutes after the 911 call was received. Meanwhile, his brother was en route to the store. At the suppression hearing, Officer D. Sims testified that he was three minutes away from Buddy's Place. Upon arriving at the scene, he did not see any police vehicles. He also testified about hearing that another suspect armed with a pistol and disguised with a ski mask was still at the scene.

As Officer D. Sims approached Buddy's Place, he saw a white Mazda leaving the store's parking lot. He radioed to dispatch that he was going to stop the vehicle. Another police officer with the Ward Police Department, Patty Andolina, also responded to the initial 911 call. While nearing the scene, she happened to be right behind Officer D. Sims and approved his request to make a stop. Officer D. Sims proceeded to make the stop, and ordered the driver to exit the vehicle and walk slowly back toward him. Next, the police officer ordered the driver, Raymond Martinez, to get down on the ground. Martinez complied, whereupon Officer D. Sims handcuffed him and did a pat-down search for weapons. No weapons were found, and Martinez was placed in the back of the officer's patrol car.

---

[1] Buddy's place was previously known as "Dude's Place."

According to the radio logs, Officer D. Sims reported at 8:45 p.m. that he had a subject in his vehicle. He asked Martinez what he was doing at Buddy's Place and whether he knew what was going on. Martinez responded that he was going into the store to get a coke, but a man told him to leave. Officer D. Sims advised Martinez that he would be released as soon as everything was straightened out. Then, the officer drove back to Buddy's Place and informed Officer E. Sims that he had a suspect in his vehicle.

In the meantime, after Officer Andolina approved the stop by Officer D. Sims, she continued to the crime scene. At the scene, Officer Andolina interviewed an eyewitness, Terry Colbert. This interview took place within ten minutes of her arrival on the scene. Additionally, Officer D. Sims had already returned to the store with Martinez in the back seat of his patrol car. Colbert gave the following description of the fleeing suspect: A dark-headed male, wearing dark clothes and baggy pants. Colbert further stated that he saw the suspect leave like "a bat out of hell" in a white vehicle. With that information, Officer Andolina approached Officer D. Sims's patrol car, opened the door, and visually confirmed that Martinez matched the description given by Colbert.

Shortly thereafter, at 8:53 p.m., Chief Deputy Mike Coffman of the Lonoke County Sheriff's Department arrived on the scene. He began to take pictures of the crime scene, including the white Mazda driven by the subject. When Deputy Coffman got to the Mazda, he reached through an open window and picked up a wallet lying on the passenger seat. The deputy opened the wallet and saw a picture ID that resembled Shane Williams — the victim-perpetrator. According to the radio logs, Deputy Coffman called in the name shown on the ID to check for warrants at 9:18 p.m. The wallet was seized and turned over to a Ward police officer.

Deputy James Kulesa of the Lonoke County Sheriff's Department also assisted in the investigation of the attempted robbery at Buddy's Place. He interviewed Martinez at the Ward Police Department beginning at 10:47 p.m., or about two hours

after the initial 911 call. During the interview, Martinez made statements implicating himself in the crime.

Subsequently, Martinez entered a negotiated plea of guilty and was sentenced to a term of twenty-five years imprisonment. The circuit court, however, allowed him to withdraw his guilty plea due to a claim of ineffective assistance of counsel. Prior to trial, Martinez moved to suppress all evidence obtained after he was arrested, including the incriminating statements made at the police station. He argued that Officer Don Sims was without statutory authority to make the arrest and that the arrest and search were made without probable cause and in violation of the United States and Arkansas Constitutions. After a hearing, and subsequent briefing, the circuit court denied Martinez's motion to suppress and a jury trial ensued. Martinez was convicted of aggravated robbery, and this appeal followed.

When a trial court's denial of a motion to suppress is challenged on appeal, our court makes an independent examination of the issue based on the totality of the circumstances and views the evidence in the light most favorable to the State. *Arnett v. State*, 342 Ark. 66, 27 S.W.3d 721 (2000). The trial court's ruling will only be reversed if it is clearly against the preponderance of the evidence. *Green v. State*, 334 Ark. 484, 978 S.W.2d 300 (1998); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998).

It is well settled in Arkansas that a law enforcement officer cannot make a warrantless arrest outside of the territorial limits of his jurisdiction without statutory authority. *Arnett v. State*, 342 Ark. 66, 27 S.W.3d 721 (2000). This court has announced the four instances where the General Assembly has delegated authority for law enforcement officers to make an arrest outside of their jurisdiction: (1) "fresh pursuit" cases under Ark. Code Ann. §16-81-301 (1987); (2) when the police officer has a warrant for arrest, as provided by Ark. Code Ann. § 16-81-105 (1987); (3) when a local law enforcement agency requests an outside officer to come into the local jurisdiction and the outside officer is from an agency that has a written policy regulating its officers when they act outside their jurisdiction, as stated in Ark.

Code Ann. § 16-81-106(3), (4) (Supp. 2001); and (4) when a county sheriff requests that a peace officer from a contiguous county come into that sheriff's county and investigate and make arrests for violations of drug laws pursuant to Ark. Code Ann. § 5-64-705 (Repl.1993). *See Henderson v. State*, 329 Ark. 526, 953 S.W.2d 26 (1997) (citing *Perry v. State*, 303 Ark. 100, 794 S.W.2d 141 (1990)). According to Martinez, and conceded by the State, only the third exception is applicable to this case.

■ Pursuant to Ark. Code Ann. § 16-81-106(c)(B)(3), (4) (Supp. 2001), an officer may make an arrest outside his jurisdiction if (1) he is acting "at the request of or with the permission of the municipal or county law enforcement agency having jurisdiction in the locale where the officer is assisting or working by request," and (2) the extrajurisdictional officer's agency has a "written policy on file regulating the actions of its employees relevant to law enforcement activities outside its jurisdiction." Under this two-pronged analysis, Martinez concedes that the Austin police officer was acting at the request and with the permission of the local agency. He maintains, however, there was no evidence that the Austin Police Department had a written policy regulating its officers when they act outside their jurisdiction.

■ Martinez is mistaken in his argument under this point. The circuit court made a specific finding in its written opinion attached to the order denying the motion to suppress that the "[Austin police officer's] city does have a policy and procedure about law enforcement assistance to and from his city." The record in this case also reflects that the State produced a copy of the Austin Police Department's written policy and procedure on extrajurisdictional activities. Here, the local law enforcement agency requested the assistance of an outside officer, and that officer's law enforcement agency had the statutorily mandated written policy. *See* Ark. Code Ann. § 16-81-106(3), (4). Under these circumstances, we cannot say that the Austin police officer was acting outside his territorial jurisdiction without the requisite

statutory authority.[2] Thus, we conclude that the circuit court's denial of the motion to suppress was not clearly against the preponderance of the evidence.

For his second point on appeal, Martinez contends that his arrest was not supported by probable cause and amounted to an illegal seizure in violation of both the United States and Arkansas Constitutions. Specifically, he asserts that the "first credible evidence that officers had that the Appellant had any involvement in the incident" developed forty-five minutes after Martinez was detained, when "Chief Deputy Coffman reached into the appellant's vehicle and discovered a wallet belonging to the decedent Williams." We disagree.

Probable cause exists where there is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that a crime has been committed by the person suspected. *Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002); *Ross v. State*, 300 Ark. 369, 779 S.W.2d 161 (1989). In assessing the existence of probable cause, this court's review is liberal and is guided by the rule that probable cause to arrest without a warrant does not require the degree of proof sufficient to sustain a conviction. *Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002); *Baxter v. State*, 324 Ark. 440, 922 S.W.2d 682. However, mere suspicion is not enough to support a finding of probable cause to arrest. *Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002); *Roderick v. State*, 288 Ark. 360, 705 S.W.2d 433 (1986)(citing *Beck v. Ohio*, 379 U.S. 89 (1964)). Probable cause to arrest without a warrant exists when facts and circumstances within the officers' collective knowledge are sufficient in themselves to warrant a person of reasonable caution in believing that an offense has been committed by the person to be arrested. *Howell v. State, supra.*

---

[2] This situation is to be contrasted with one where an officer is acting outside his or her territorial jurisdiction and none of the statutory grounds for making an extraterritorial arrest appear to apply to the facts of the case. In the latter situation, the issue becomes whether the local officer is present in his or her capacity as a law enforcement officer and participates in making the arrest. *See Logan v. State*, 264 Ark. 920, 576 S.W.2d 203 (1979).

In this case, Officer D. Sims stopped Martinez within a couple of minutes of the 911 call. At the time of that stop, it was dark and law enforcement officers already knew that there had been an attempted aggravated robbery at Buddy's Place. They also knew that there were at least two suspects, one having been shot by the store owner. The officers were told the second suspect was armed and wearing a ski mask. When Officer D. Sims arrived at the store, the only vehicle seen leaving the crime scene was a white Mazda driven by Martinez. Additionally, ten minutes after the stop, Officer Andolina took a statement from an eyewitness who described the second suspect and the suspect's car. The eyewitness's description matched Martinez and his vehicle.

■ The information outlined above, which is sufficient to constitute probable cause, was available to police officers prior to the search of Martinez's vehicle. Because the record reflects that probable cause developed before Chief Deputy Coffman found the wallet in Martinez's vehicle, we conclude that the second argument on appeal is without merit.

■ In his third and final point on appeal, Martinez contends that the search of his vehicle was not supported by probable cause. Specifically, he argues that the moment Chief Deputy Coffman's "hand breached the interior of that vehicle and grabbed that wallet probable cause had to exist." As we have already concluded in connection with his second point, probable cause developed before the search of Martinez's vehicle. Accordingly, Martinez's last point is also without merit.

Affirmed.