The Honorable Bobby L. Glover State Senator Post Office Box 1 Carlisle, Arkansas 72024
Dear Senator Glover:
I am writing in response to your request for my opinion on various questions relating to an incident that reportedly involved "an intruder breaking into a home which was outside the city limits of England." Your questions are as follows:
 1. What is the territorial jurisdiction of a municipal police department?
 2. What is the legal authority of a municipal police officer operating outside of the city limits when such officer is conducting an investigation which could possibly result in a felony or misdemeanor charge?
 3. What is the possible liability exposure of an officer or city when the officer is conducting an official police investigation which is outside of his jurisdiction?
 4. What legal authority does a municipal police officer have when such officer is conducting an official police investigation outside of his jurisdiction but under a mutual agreement with the county sheriff's department?
RESPONSE
Question 1: What is the territorial jurisdiction of a municipalpolice department?
A certified municipal police officer has authority to act outside of the municipality's corporate boundaries under various circumstances. Although the authorities on this issue generally address a police officer's extra-territorial arrest power, I believe the principles discussed below generally apply to any activities an officer might normally undertake in the course of his duties. See Ark. Op. Att'y Gen. No. 98-212 (opining that extraterritorial jurisdiction pursuant to A.C.A. §§ 5-64-705 and16-81-106, see discussion below, involves "investigat[ing] crimes" as well as "mak[ing] warrantless arrests.").
As the Arkansas Supreme Court noted in Martinez v. State,352 Ark. 135, 140-41, 98 S.W.3d 827 (2003):
 It is well settled in Arkansas that a law enforcement officer cannot make a warrantless arrest outside of the territorial limits of his jurisdiction without statutory authority. Arnett v. State, 342 Ark. 66, 27 S.W.3d 721 (2000). This court has announced the four instances where the General Assembly has delegated authority for law enforcement officers to make an arrest outside of their jurisdiction: (1) "fresh pursuit" cases under Ark. Code Ann. § 16-81-301 (1987);[1] (2) when the police officer has a warrant for arrest, as provided by Ark. Code Ann. § 16-81-105 (1987); (3) when a local law enforcement agency requests an outside officer to come into the local jurisdiction and the outside officer is from an agency that has a written policy regulating its officers when they act outside their jurisdiction, as stated in Ark. Code Ann. § 16-81-106(3), (4) (Supp. 2001); and (4) when a county sheriff requests that a peace officer from a contiguous county come into that sheriff's county and investigate and make arrests for violations of drug laws pursuant to Ark. Code Ann. § 5-64-705 (Repl. 1993). See Henderson v. State, 329 Ark. 526, 953 S.W.2d 26 (1997) (citing Perry v. State, 303 Ark. 100, 794 S.W.2d 141 (1990)).
The above referenced legislation relating to "fresh pursuit" cases is an intrastate application of the Uniform Act on Interstate Fresh Pursuit, A.C.A. § 16-81-401 through -407 (Repl. 2005), see discussion in Reed v. State, 330 Ark. 645,957 S.W.2d 174 (1997), which authorizes officers from other states to arrest individuals if they are in "fresh pursuit" of suspects.[2] In my opinion, municipal officers have arrest authority in other states that have adopted the Uniform Act on Interstate Fresh Pursuit to the extent described in that legislation.
Question 2: What is the legal authority of a municipal policeofficer operating outside of the city limits when such officer isconducting an investigation which could possibly result in afelony or misdemeanor charge?
The scope of a municipal officer's authority, if any, under the described circumstances will be dictated by the statutes referenced in my response to your first question. Only if all the factual predicates exist to trigger application of a particular statute will the officer be authorized to make an out-of-jurisdiction arrest relating to a possible felony or misdemeanor charge. For instance, A.C.A. § 16-81-106(c)(1) authorizes an officer to make a warrantless arrest outside his or her jurisdiction if a person commits a felony or misdemeanor within the officer's presence. The determination whether this condition has been met in a particular case is exclusively one of fact. Subsections (c)(3) and (c)(4) of this statute further authorize an officer to make a warrantless arrest in another jurisdiction at the request or with the permission of the law enforcement agency having primary jurisdiction, subject to the condition that the arresting officer's department must have a written policy addressing such arrests. Again, only a finder of fact could determine whether these conditions have been met. Likewise determining whether making a warrantless arrest outside of one's jurisdiction is justified under the "hot pursuit" standard set forth at A.C.A. § 16-81-301 will entail making a factual inquiry into the circumstances of the arrest. This same conclusion applies to an arrest made pursuant to A.C.A. §5-64-705, which authorizes an officer to make a drug arrest in a contiguous county only upon the request of the law enforcement agency having primary jurisdiction.
Question 3: What is the possible liability exposure of anofficer or city when the officer is conducting an official policeinvestigation which is outside of his jurisdiction?
Counties and municipalities and their employees, including law enforcement officers, are afforded a qualified immunity from tort liability except to the extent of insurance coverage. Section21-9-301 of the Code provides:
 It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees.
This provision applies only in situations involving tort liability, and it contains an exception for claims covered by liability insurance. See City of Caddo Valley v. George,340 Ark. 203, 9 S.W.3d 481 (2000). Moreover, the immunity granted by this statute does not include immunity from liability for intentional torts. See Deitsch v. Tillery, 309 Ark. 401,833 S.W.2d 760 (1992); Battle v. Harris, 298 Ark. 241,766 S.W.2d 431 (1989). Although A.C.A. § 21-9-301 speaks only in terms of the immunity of the political subdivision itself (and its "boards, commissions, agencies, authorities or other governing bodies"), the Arkansas Supreme Court has interpreted the statute as extending immunity to officers and employees of the political subdivisions as well when they negligently commit acts or omissions in their official capacities. See, e.g., Doe v. Baum,348 Ark. 259, 270, 72 S.W.3d 476 (2002); Autry v. Lawrence,286 Ark. 501, 696 S.W.2d 315 (1985) (stating that it was the intent of the General Assembly in enacting A.C.A. § 21-9-301 to grant immunity to municipal agents and employees for acts of negligence committed in their official capacities).
A different "qualified immunity" may apply if a plaintiff alleges a violation of federal law against the officers or employees of a governmental entity. Under the doctrine of qualified immunity, an individual is immune from suit if he undertook the actions complained of in good faith in the performance of his duties and the acts do not violate any clearly established constitutional right. Saucier v. Katz, 533 U.S. 194 (2001); Harlow v.Fitzgerald, 457 U.S. 800 (1982). The test for the applicability of qualified immunity turns upon the "objective legal reasonableness of the action," assessed in light of legal rules that were "clearly established" at the time the action was taken.Id.; Anderson v. Creighton, 483 U.S. 635 (1987). The immunity is "qualified" because it does not apply where the activity is in violation of clearly established law that a reasonable person would have known. Id.; Robinson v. Beaumont, 291 Ark. 477,725 S.W.2d 839 (1987); Matthews v. Martin, 280 Ark. 345,658 S.W.2d 374 (1983).
Section 1983 of title 42 of the United State Code provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
State law immunities do not override a cause of action under this statute. See Monell v. New York City Department of SocialServices, 436 U.S. 658 (1978).
In my opinion, the fact that a statutorily authorized law enforcement activity takes place outside of an officer's primary jurisdiction in no way affects the scope of the immunities described above. To the extent the state has by statute delegated its police powers to the officers of a municipality, in effect authorizing them to act outside their primary jurisdiction under recited circumstances, the above described immunities will apply.
Question 4: What legal authority does a municipal police officerhave when such officer is conducting an official policeinvestigation outside of his jurisdiction but under a mutualagreement with the county sheriff's office?
It is not entirely clear in your question whether the referenced "mutual agreement" arose pursuant to (1) A.C.A. § 16-81-106(3), which authorizes a certified law enforcement officer to make an arrest anywhere in the state upon the request of a local law enforcement agency so long as the outside officer is from an agency that has a written policy regulating its officers when they act outside their jurisdiction; or (2) A.C.A. § 5-64-705, which authorizes a county sheriff to request that a peace officer from a contiguous county come into that sheriff's county and investigate and make arrests for violations of drug laws. However, in either event, pursuant to the statutory authority discussed in my response to your first question, I believe the officer acting outside of his primary jurisdiction would have the same law enforcement authority as the officers in the foreign jurisdiction.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] Section 16-81-303 of the Code (Repl 2005) defines the term "fresh pursuit" as follows:
 (a)(1) The term "fresh pursuit" as used in this subchapter shall include:
(A) Fresh pursuit as defined by the common law; and
(B) The pursuit of a person:
 (i) Who has committed a felony or is reasonably suspected of having committed a felony in this state;
 (ii) Who has committed or attempted to commit any criminal offense in this state in the presence of the arresting law enforcement officer referred to in § 16-81-301; or
 (iii) For whom the officer holds a warrant of arrest for a criminal offense.
 (2) It shall also include the pursuit of a person suspected of having committed a supposed felony in this state, though no felony has actually been committed, if there is reasonable ground for so believing.
 (b) Fresh pursuit as used in this subchapter shall not necessarily imply instant pursuit, but pursuit without unreasonable delay.
[2] Subsection 16-18-403(1) defines the term "fresh pursuit" as follows:
 "Fresh pursuit" shall include fresh pursuit as defined by the common law, and also the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. It shall also include the pursuit of a person suspected of having committed a supposed felony, though no felony has actually been committed, if there is reasonable ground for believing that a felony has been committed. Fresh pursuit as used in this subchapter shall not necessarily imply instant pursuit, but pursuit without unreasonable delay[.]